351 A.2d 824.

STATE *vs.* RICHARD E. FREEMAN AND JOHN M. ABBOTT.

JANUARY 14, 1976.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. These are separate indictments each charging the defendants John M. Abbott and Richard E. Freeman with the crime of rape. After trial in Superior Court, the jury returned a verdict of guilty as charged against each defendant. A judgment of conviction was thereafter entered by a Superior Court justice sentencing each defend-

ant to a term of 10 years at the Adult Correctional Institutions. From the judgment of conviction, each defendant has appealed to this court.

The record indicates that on September 15, 1969, the grand jury returned indictments against defendants charging each with the crimes of rape, robbery, sodomy and kidnapping. On November 17, 1969, defendants were arraigned in Superior Court and after entering a plea of not guilty to each indictment were released on bail. Following defendants' arraignment, extensive plea bargaining activities were engaged in by defendants' counsel and members of the staff of the Attorney General. It appears that during this period defendants' counsel was attempting to convince the Attorney General that a sentence of less than jail should be recommended in the event that defendants would enter a plea to each indictment. No agreement was reached in this regard.

The cases were reached for trial before a Superior Court justice on Friday, February 23, 1973, and continued for trial until Monday, February 26, 1973. Plea bargaining activities were continued over the ensuing weekend. On February 26, 1973, the prosecutor and defendants' counsel reached an agreement under the terms of which the prosecutor would reduce the charge of robbery against each defendant to a charge of larceny from the person and defendants would enter a plea of nolo to the amended indictment, and also a plea of nolo to the indictments charging rape, sodomy and kidnapping. The prosecutor further agreed to recommend to the court a sentence of two to three years on the amended indictment charging larceny from the person and to recommend to the court that a deferred or suspended sentence be imposed on the indictments charging rape, sodomy and kidnapping.

On February 26, 1973, defendants appeared before a Superior Court justice, and on motion of the prosecutor,

the indictments charging defendants with the crime of robbery were amended to a charge of larceny from the person. The defendants thereupon entered a plea of nolo to each indictment. After exhaustive questioning of defendants by the Superior Court justice as to the voluntariness and the factual basis of these pleas and after apprising them of the legal ramifications of their action, he accepted their pleas of nolo to each indictment.

The Superior Court justice then stated to defendants as follows:

"The Court will accept the nolo pleas with the understanding that they cannot be withdrawn, this is a final act on your part. Now I am going to tell you this morning exactly, or almost exactly, what disposition I will make of these cases at the appropriate time. I want you to understand that there will be no withdrawal of the nolo plea allowed, the nolo pleas will stick. On the date to which these cases are going to be continued, and they will be continued to March 23, 1973, I am going to impose on the charge of larceny from the person to each of you a sentence of not less than two nor more than three years, that is an actual sentence. I don't know at this point just what the sentence will be but it will be between two and three years. It will depend to some extent on my study of the presentence report and the plea on your behalf by your attorney Mr. Gladstone. I am not going to ask you to make it now, Mr. Gladstone, because I think it would be more fitting if you make it at the time sentence is to be imposed. On the other charges, on the charge of abominable and detestable crime against nature, I am going to place you each on a seven-year suspended sentence with seven years probation. On the other two charges, rape and kidnapping, I am going to place you on deferred sentences. That means when you get out, when you finish serving your sentence, whether you are on parole or whatever, you will be on probation for five years. Do you understand all of that?"

The court continuing declared:

"Finally, I must say to both of you, I am going to keep my word and do on March 23 exactly what I told you I am going to do. The only thing that isn't definite here is the length of that sentence, it will be not less than two nor more than three years. All that is conditioned upon both of you behaving yourself between now and then. If you should get in any further difficulties, I will tell you now, you won't be able to withdraw your nolo plea but I will not feel bound to give that sentence that is a bargain with you, do you understand that?"

The cases were thereupon continued to March 23, 1973, for sentencing pending reception of a presentence report and defendants were continued on bail.

On the day following the entry of the nolo pleas by defendants and the commitment as to sentence by the Superior Court justice, criticism of the procedure appeared in newspaper articles and on television and radio programs. A statement was issued by the Attorney General to the effect that the recommendations made by the prosecutor were without his permission, were not in keeping with the established procedure of the department of the Attorney General and therefore constituted a mistake by the prosecutor. Thereafter, several conferences were held between defense counsel, the prosecutor and the Superior Court justice who had accepted the nolo pleas of defendants. On March 2, 1973, the Superior Court justice released a statement to the newspapers in which he stated that he would withdraw the commitment made as to sentencing of defendants on February 26, 1973.[1]

---

[1]Statement of the Superior Court justice released on March 2, 1973:

"The cases of State v. Abbott and State v. Freeman have been the subject of considerable publicity during the past week. The Court has given these matters serious and constant consideration since the first story with reference to the cases appeared in the press in which story the Attorney General of this State was quoted to the effect that the representative of his department who handled the cases before the Court had made a mistake. After reading that article, the Court

On March 23, 1973, the statement of the Superior Court justice to the press on March 2, 1973, was read into the record.

On March 23, 1973, the date set for sentencing of defendants, counsel for defendants argued that under the circumstances defendants had lost their presumption of innocence, that they could not be placed in the position of status quo as it existed before the entry of their nolo pleas and that they therefore would be deprived of a fair and impartial trial. Counsel for defendants then moved that the commitment made as to sentencing by the Superior Court justice on February 26, 1973, be specifically enforced. In the alternative, under protest, defendants' counsel requested that pleas of not guilty be entered on the record.

sent for the actual files from the Attorney General's office and read in considerable detail the pertinent portions of those files. While it has been and will continue to be normally the position of this Court that it will accept the responsible recommendations of the Attorney General's representative in the disposition of criminal cases, the situation in the instant cases is such as to cause this Court to give serious thought to what its position ought to be in the Abbott and Freeman matters.

"I have discussed the matters at length with Attorney General Israel and at the outset I would like to make it clear that I have had and I do have the utmost respect for the integrity of Attorney General Israel. Furthermore, I am convinced that the young man from his department who made the recommendation before me was not deliberately intending to mislead the Court in any manner whatsoever. I should also point out that Mr. Gladstone, who represented the defendants before me, conducted himself with the utmost propriety in our conversation with reference to this case in chambers in the presence of the member of the Attorney General's office as he did in court when the pleas were actually entered.

"In discussing the matter with the Attorney General this morning he informed me that under a United States Supreme Court decision, Santobello v. New York, decided in December of 1971, it is his opinion that he is bound by the recommendation which his representative made in court. However, my reading of that case leads me to the very considered opinion that the Court is not so bound even assuming that the Attorney General is bound as indicated above. In my considered judgment this Court would not be acting in a responsible

The motion for specific performance of the commitment made as a result of the "plea bargaining" was denied. The nolo pleas were ordered withdrawn and pleas of not guilty were entered as to each indictment for each defendant.

On March 30, 1973, in response to a request from the Superior Court justice, the state moved to enlarge the record and on April 9, 1973, the state's motion was granted. On that date, the Attorney General stated that the recommendations made by the prosecutor on February 26, 1973, at the time of the negotiated nolo pleas were not in accordance with department policies in similar cases and were not agreed to by the Attorney General but that in view of prevailing case law,[2] the Attorney General felt

---

manner if it were to recognize the Attorney General's position to the effect that the original recommendation of that department was a mistake and if the Court were to say it would ignore the mistake and make no change in its original indication as to sentence. Consequently, this Court has decided that on the 23rd day of March, when the cases come before me, I shall inform the defendants and their attorney of my position as indicated in this statement; namely, that I shall withdraw the previous commitment I made as to sentencing and I shall, of course, offer them the opportunity of withdrawing pleas of nolo and entering pleas of not guilty in order that the cases may be tried at some later date when there can be no question but that the defendants will receive a fair trial in every sense of the word.

"It should be understood, without equivocation, that the Court's action in this matter should not and must not be construed by anyone as an indication of the Court's feeling as to the guilt or innocence of these defendants. Once the pleas of nolo are withdrawn from the record and pleas of not guilty are entered, these men, as do all defendants, stand before the Court and before the world protected by the presumption of innocence and it will then be the obligation of a jury to determine, in accordance with our system of justice, their guilt or their innocence."

[2]The reference was to *Santobello* v. *New York*, 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), where it was held that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled even though the promise or agreement by the prosecutor may have been made through inadvertence or mistake.

bound by the recommendation made by a member of his staff. The Superior Court justice stated that assuming that the Attorney General was bound by the recommendation made by the prosecutor that under the circumstances the court was not so bound.

The defendants thereafter petitioned this court for a writ of certiorari to enforce the plea bargain commitment made in Superior Court on February 26, 1973. We denied defendants' petition on June 29, 1973. *State* v. *Freeman,* 111 R. I. 937, 307 A.2d 542 (1973).

In Superior Court, on September 10, 1973, defendants renewed their motions for specific performance of the plea bargain commitment. The renewal motions were denied by a second Superior Court justice, who on September 19, 1973, also denied defendants' motions to dismiss the indictments because of adverse pretrial publicity.

After trial in the Superior Court, the jury on October 26, 1973, returned a verdict of guilty against each defendant on the charge of rape and kidnapping and a verdict of not guilty against each defendant on the charge of larceny from the person and sodomy.

On January 8, 1974, defendants were each sentenced to a term of 10 years at the Adult Correctional Institutions on the conviction for rape and sentence was deferred on the conviction for kidnapping. On January 24, 1974, notices of appeal were filed as to defendants' conviction for rape. The appeals were docketed in this court on March 14, 1974. On April 1, 1974, we remanded these cases to Superior Court for a hearing on defendants' motions for post-conviction bail which was denied by a Superior Court justice on April 10, 1974. On May 10, 1974, after hearing, we granted bail to each defendant pending determination of their appeals. *State* v. *Abbott,* 113 R. I. 430, 322 A.2d 33 (1974).

The cases are now before us on defendants' appeal from

the judgments of conviction entered on the indictments charging rape.

The disposition of criminal charges by agreement between the prosecutor and the accused has become an essential part of the administration of criminal justice and is highly desirable for many reasons. *See Brady* v. *United States,* 397 U. S. 742, 751-52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A plea to a criminal charge by a defendant and the acceptance of such a plea by the court must be accompanied by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello* v. *New York,* 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

The Superior Court justice in receiving the guilty pleas had been careful and thorough in questioning defendants in order to determine that their guilty pleas were entered into knowingly and voluntarily.

Here, it is conceded that the pleas entered by the accused were based on the agreement of the prosecutor which the trial justice not only approved but in addition specifically made a commitment as to the sentence to be imposed. The record indicates that the Attorney General stated that he was bound by *Santobello* and consequently was prohibited from withdrawing his agreement. The Superior Court justice while conceding the position of the Attorney General to be correct nevertheless stated that the court was not bound by *Santobello* and proceeded to withdraw his commitment made in open court as to sentence on the pleas entered by defendants.

We first consider defendants' argument that the case of *Santobello* v. *New York, supra* is controlling. The de-

fendants contend that the Superior Court justice committed error when he withdrew his commitment as to sentence and that by such action the prosecutor in effect was allowed to breach his promise which he was prohibited from doing by *Santobello*. In that case the defendant, after negotiations with the prosecutor, withdrew his not guilty plea to two felony counts of gambling and pleaded guilty to lesser offenses on the prosecutor's agreement to make no recommendation as to sentence.

Some months later, a new prosecutor, contrary to the agreement, recommended the maximum sentence of 1 year. The trial justice imposed a sentence of 1 year but noted that the action was not as a result of the recommendation by the District Attorney, but by his own assessment of the defendant's prior criminal record and lack of rehabilitative potential. The United States Supreme Court held that the interests of justice and proper recognition of the prosecutor's duties in relation to promises made in connection with plea bargaining require that the judgment be vacated, and that the case be remanded to the state courts for further consideration as to whether the circumstances require only that there be specific performance of the agreement on the plea, in which case the petitioner should be resentenced by a different judge, or whether in this view of the state court, circumstances require that the petitioner be granted the opportunity of withdrawing his plea. The Court further stated:

> "* * * when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fullfilled." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

Here, it is apparent that there was not a breach of the prosecutor's promise made in the plea bargaining agreement even though the record indicates that the Attorney General stated that the recommendation made by the

prosecutor was without his approval, and also was not in keeping with the usual department procedures. However, it is clear that although not withdrawing the recommendation made by the prosecutor, the Attorney General repudiated in principle the recommendation of the prosecutor. It is equally clear that the action of the trial justice in refusing to enforce the plea bargain was as a result of his conclusion that the recommendation of the prosecutor was a mistake.[3]

In the circumstances of this case where the trial justice not only participated in the plea bargaining agreement but in addition stated in open court the sentence he would impose, we find no relevant difference between a situation where the prosecution fails to make a promised recommendation and where the trial justice fails to impose a promised sentence since in either case the promise clearly is part of the inducement or consideration for the plea of the accused and such promise must be fulfilled. *Santobello* v. *New York, supra.*

We conclude that in the circumstances the trial justice was bound by the rule in *Santobello* and therefore committed error in withdrawing his commitment as to sentence. We proceed now to consider the relief to which defendants are entitled.

As we have stated it is clear that the trial justice did not refuse to apply *Santobello* on the ground that he independently concluded that the proposed sentence would be unjust or inappropriate. Rather, he refused to specifically enforce the sentence to which he was committed

---

[3]Statement of Superior Court justice:

"In my considered judgment this Court would not be acting in a responsible manner if it were to recognize the Attorney General's position to the effect that the original recommendation of that department was a mistake and if the court were to say it would ignore the mistake and make no change in its original indication as to sentence."

as a result of the plea bargaining agreement because he concluded that the promise of the prosecutor was a mistake.

In *Santobello,* the Court has taken the position that if a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement, such a promise must be fulfilled. In remanding *Santobello* the Court stated:

> "The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty." *Id.* at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

It is clear that the Court's directive was not simply to reinstate the defendant's plea of not guilty, but rather, the lower court was directed to explore whether or not specific performance was the more appropriate remedy.[4]

Here, the agreement was reached after extensive plea bargaining between the prosecutor and defendants, and

---

[4]In a significant concurring opinion in *Santobello,* Justice Douglas stated:

"Where the 'plea bargain' is not kept by the prosecutor, the sentence must be vacated and the state court will decide in the light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." *Santobello* v. *New York,* 404 U. S. at 267, 92 S.Ct. at 501, 30 L.Ed.2d at 436.

the trial justice after extended questioning of defendants regarding the voluntariness of their pleas committed himself to a sentence of from 2 to 3 years subject to the reception of a presentence report, and as stated earlier his withdrawal of the sentence was based on his concern for the Attorney General who stated that the agreement was made by the prosecutor without his approval and not in keeping with the usual standards of the department and and was therefore a mistake.

It is true as stated by the state that there is no authority that due process requires the imposition of the remedy of specific performance where a plea bargain is breached by the state, but rather the available remedies are stated in the alternative either the withdrawal of the plea or enforcement of the plea bargain agreement.[5]

Under the peculiar circumstances of the instant case, we are satisfied that due process and the interests of justice will be fully served by a remand for sentence in accordance with the specific performance of the sentence to which the trial justice had committed himself in furtherance of the plea bargain agreement.

The defendants' appeals are sustained, the judgment of conviction as to each defendant is vacated, the sentence imposed is set aside and the cause is remitted to the Superior Court with directions that sentence be imposed on each defendant in accordance with the commitment made as to sentence as a result of the plea bargaining agreement.

Mr. Chief Justice Roberts, concurring. I concur in the conclusion of the opinion expressed by the majority, but

---

[5]*Mosher* v. *LaVallee,* 351 F.Supp. 1101 (S.D. N.Y. 1972), *aff'd* 491 F.2d 1346 (2d Cir. 1974), *cert. denied,* 416 U. S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Cross* v. *State,* 248 Ark. 553, 452 S.W.2d 854 (1970); *Gutierrez* v. *Baker,* 276 So.2d 470 (Fla. 1973); *People* v. *Riebe,* 40 Ill.2d 565, 241 N.E.2d 313 (1968); *People* v. *Baker,* 46 Mich. App. 495, 208 N.W.2d 220 (1973); *People* v. *Eck,* 39 Mich. App. 176, 197 N.W.2d 289 (1972).

I reach it by a different path. I believe that two recent decisions by this court control the outcome here.

In *State* v. *Welch*, 112 R. I. 321, 309 A.2d 128 (1973), a criminal defendant offered to substitute a plea of nolo contendere for his prior plea of not guilty when the prosecutor promised to recommend a certain sentence. The trial justice did not participate in the plea negotiations or promise any particular sentence. In court the trial justice accepted the defendant's nolo plea and the prosecutor recommended the negotiated sentence, but the trial justice then imposed a stiffer sentence. The defendant's subsequent motion to vacate the sentence was denied. On appeal we found on the record that the defendant had pleaded nolo in bona fide reliance on the prosecutor's unqualified representation that in exchange for the plea the state would give the defendant a lesser punishment than he might otherwise have received. We held that under those circumstances the plea was not freely given. The denial of Welch's motion to vacate his sentence was quashed, and the case was remanded to the Superior Court.

In *Nardone* v. *Mullen,* 113 R. I. 415, 322 A.2d 27 (1974), a criminal defendant's plea of nolo contendere was accepted. Sentence was imposed and then vacated, and a second sentence was imposed. After rebriefing and reargument we held that the first sentence was void due to fraud by the defendant, so jeopardy as to the sentence did not attach. *State* v. *Nardone*, 114 R. I. 363, 334 A.2d 208 (1975). However, we stated unequivocally in the first *Nardone* opinion that jeopardy as to the plea attaches upon acceptance of a plea of nolo, regardless of whether sentence is imposed then or later.[1]

---

[1]"[A] plea of nolo contendere, once accepted, becomes an implied confession of guilt, and imposition of sentence follows as a matter of course. Thus, for the purpose of the case in which it was entered, such

In the wake of *Welch* and *Nardone,* what may a sentencing judge do after accepting a criminal defendant's plea of nolo made in bona fide reliance on the prosecutor's unqualified representation that in exchange for the plea the state will give the defendant a lesser punishment than he might otherwise receive?

I believe that once the court accepts the plea of a *Welch* kind of defendant, the court may not thereafter impose a sentence stiffer than the one negotiated. To use language that may be inapposite, the court's acquiescence to a defendant's bona fide reliance estops it from imposing the stiffer sentence. And since under *Nardone* jeopardy attaches upon the court's acceptance of a defendant's nolo plea, subsequent trial on the charge would constitute double jeopardy. In short, I would hold that where the court accepts a criminal defendant's plea of nolo made in bona fide reliance on the prosecutor's unqualified representation that the state in exchange for the plea would impose a certain sentence, then the court thereafter must impose that sentence.[2] Of course if the defend-

---

a plea is equivalent to one of guilty. (citations omitted) And even the state concedes that the same consequences, including the attachment of jeopardy, attend the entry of a plea of guilty as attend the rendition of a jury verdict of guilty. (citations omitted) It follows that the entry of defendant's plea of nolo was as much a conviction as would have been a jury's verdict of guilty against him, and that jeopardy attached in this case upon acceptance of his plea of nolo contendere." *Nardone* v. *Mullen,* 113 R. I. 415, 417-18, 322 A.2d 27, 29 (1974).

[2]To keep from being unwillingly bound by a prosecutor, a trial justice need only inquire of the defendant before accepting his plea whether he is pleading in reliance on any promises. The normal procedure in a criminal plea bargaining case may then resemble the provisions of paragraphs (e)(2) through (e)(4) of the new Fed. R. Crim. P. 11, effective December 1, 1975:

"(2) Notice of Such Agreement.—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. Thereupon the court may

ant chooses to forego that sentence by voluntarily withdrawing his plea of nolo and reinstating his plea of not guilty, then he thereby waives jeopardy and may be tried on the charge.

This approach is consistent with the results in *Welch* and *Nardone* and would strengthen the institution of plea bargaining.[3] A criminal defendant would know for sure that what he bargained away his rights for would in fact

accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

"(3) Acceptance of a Plea Agreement.—If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

"(4) Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

[3]It may be argued that a *Welch* kind of plea is wholly involuntary and therefore void *ab initio*. In that case the original plea of not guilty would still be good. The court would have no discretion to change the plea or impose any sentence. Since the plea of nolo would be a nullity, jeopardy would not attach upon its purported acceptance. *State v. Nardone*, 114 R. I. 363, 334 A.2d 208 (1975). The result of this reading of *Welch* would be to announce that the only good criminal pleas of nolo are those made with full knowledge that the court may impose any sentence within the law without regard for the plea negotiations. In return for his plea of nolo, a defendant would receive only a certain recommendation by the prosecutor, a recommendation that would not bind the court in any way. *Santobello v. New York*, 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). While this approach has merit, I find it unacceptable for the blow it would deal the institution of plea bargaining. To keep plea bargaining robust a criminal defendant must be offered an inducement sufficient to justify waiver of his constitutional rights to a public trial by a jury of his peers and to be confronted with the witnesses against him. Often enough the guarantee of a cer-

be delivered. And yet a simple inquiry by the court would prevent any usurpation of its rightful power over sentencing.

In the case at bar there appears ample evidence that defendants pleaded nolo in bona fide reliance on the state's promise of the negotiated sentence. The defendants negotiated for over a full year. They were willing to go to trial as late as February 24, 1973. The trial justice promised to impose the negotiated sentence before he finally accepted defendants' pleas. These circumstances convince me that this case comes under the rule of *Welch* whereby the court may not impose a sentence stiffer than the one bargained for.

When the trial justice accepted defendants' pleas of nolo on February 26, 1973, jeopardy as to the pleas attached. Thereafter, defendants were faced with the alternatives of accepting a stiffer sentence or reinstating their not guilty pleas. On March 23, 1973, defense counsel voiced his clients' jeopardy concerns in the course of arguing unsuccessfully for "specific performance." The defendants withdrew their pleas of nolo under protest. Under *Welch* and *Nardone* I would find that this withdrawal was involuntary, since it was coerced by the prospect of an unlawful alternative. Consequently, jeopardy remained attached as to the plea.

Counsel repeated his clients' jeopardy concerns in renewing their motions for specific performance on September 10, 1973, before the trial. In the wake of *Welch* and *Nardone,* those concerns are recognized and protected. I would hold that the trial commencing October 10, 1973,

---

tain sentence is sufficient. But the guarantee only of a certain prosecutorial recommendation will be sufficient far less often. Consequently, I cannot read *Welch* to mean that the plea of nolo was so involuntary as to be void *ab initio.*

constituted double jeopardy and is, therefore, void.[4] The negotiated sentence should be imposed unless the defendants voluntarily withdraw their pleas of nolo.

Aside from my belief in the soundness of this approach, I have been reluctant to join in the majority or dissenting opinions for at least three reasons. First, in light of our own case of *Welch* I see no need for the majority's reliance either on the fact of the trial justice's participation in the plea negotiations or on the inapposite case of *Santobello* v. *New York,* 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Second, I share my brother Kelleher's wariness of grafting contract analysis onto criminal plea bargaining situations. And third, unlike my brother Kelleher, I would not penalize the defendant for the prosecutorial "goof" but instead would adopt the standard of *Santobello* v. *New York, supra* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433: "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done."

Mr. Justice Kelleher, dissenting. I cannot subscribe to the thoughts expressed by my brother Doris and those of the Chief Justice.

I would first note that I am not convinced as to the extent of the sentencing justice's participation in the actual hammering out of the bargain reached in the case at bar. While the prosecutor at the February 26, 1973 hearing did state that the guilty pleas had been negotiated between defense counsel and "myself and the Court," it

---

[4]It should be noted that *Welch* was decided on August 28, 1973, after our denial of defendants' petition for a writ of certiorari to enforce the plea bargain commitment, *State* v. *Freeman,* 111 R. I. 937, 307 A.2d 542 (1973), and before commencement of their trial. Also, we decided *Nardone* on July 9, 1974, while defendants' present appeal to this court was pending. Hence it is understandable that the trial justice below did not follow the path I have taken in this opinion.

is by no means clear from the record before us as to just what part the sentencing judge played in formulating a proposal which called for a reduction of one charge and a prison sentence on the reduced charge of not less than 2 nor more than 3 years, the deferring of sentences on the rape and kidnapping indictments, and the suspension of the execution of sentence in the sodomy case. It may be that all the sentencing justice did was to signify his approval of the "package" that had been worked out by counsel. Again, it may be that he was an active third party in the negotiations just described, but the colloquy that took place between the court and counsel does not make this supposition that clear.[1] However, my uncertainty as to the role played by the sentencing justice is in no way the basis for this dissent.

In this case, the communications media performed a valuable public service. Once it began to publicize the bargain reached between the prosecution and defense counsel with its apparent disparity in the penalties given defendants here when compared with those meted out in other recent convictions involving kidnapping and rape charges, the then Attorney General informed the sen-

---

[1] The Superior Court has not promulgated any rule that delineates a procedural pattern which would standardize plea bargaining in that court. The American Bar Association in its *Minimum Standards for Criminal Justice Relating to Guilty Pleas* §3.3 (1968) has concluded that the trial justice should not participate in such negotiations until a tentative agreement has been reached by counsel for both parties. At that time the ABA standards would permit the trial justice to indicate if he will concur in the proposed disposition provided the presentence report is consistent with the representations made to him. In New Jersey, according to rules promulgated by the Supreme Court, the trial judge takes no part in the negotiations. The agreement is placed on the record in open court. If the proposed plea is accepted, the acceptance is tentative and conditional. If the trial judge feels that the proposed plea presented to him will not serve the ends of justice, the defendant may then and there withdraw his plea. 94 N.J.L.J. Index 1 (1971).

tencing justice that there had been a communication gap in his department. The sentencing justice's statement which was published in the press and read into the record at the March 23, 1973 hearing makes it crystal clear that at the time he indicated that he would approve the agreement, he had assumed that the negotiations had been approved by the then Attorney General. A controversy began to develop, and the sentencing justice sent for and reviewed the prosecutor's files. It was then that the court decided that he could no longer endorse the February 1973 agreement. When defendants returned for sentencing, the sentencing justice emphasized that the sole reason for his not abiding by his earlier promise was his concept "of the proper administration of justice in criminal matters." Having had his say, he denied defendants' request for specific performance and ordered the withdrawal of the previous pleas and the entry of not guilty pleas.

The position taken by the sentencing justice in March 1973 is completely in line with the rationale and holding of *Santobello* v. *New York*, 404 U. S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). There the prosecutor had breached its bargain. The Chief Justice, joined by Mr. Justice White and Mr. Justice Blackmun, were of the opinion that the ultimate relief to be afforded was a matter to be determined at the state level. Mr. Justice Douglas concurred with the admonition that in choosing the remedy, the great weight, if not preference, should be accorded to the defendant's choice. Mr. Justice Marshall, joined by Mr. Justice Brennan and Mr. Justice Stewart, took the view that the defendant had an absolute right to withdraw his guilty plea if he so desired.

*Santobello* is a plurality opinion. It suggests that when a governmental agency fails or is unable to effectuate its part of a plea bargain, the judge before whom the guilty plea was entered may either vacate the plea or direct that

the bargain be kept. However, *Santobello* gives no indication that one remedy is preferred over the other. In most of the cases that have preceded or followed *Santobello,* the remedy employed has been a vacating of the plea. *Miller* v. *State,* 272 Md. 249, 322 A.2d 527 (1974), and the cases cited therein.

In *People* v. *Selikoff,* 35 N.Y.2d 227, 318 N.E.2d 784, 360 N.Y.S.2d 623 (1974), the New York Court of Appeals pointed out the incongruity of attempting to apply contract law to plea bargaining. There the court pointed to a possibility that there could never be any binding agreement either because of fraud in the inducement or a unilateral mistake suffered by the defendant. I, too, wonder about the availability of the doctrine of mutuality of remedy and ask what would happen if the state sought specific performance of a prior promise to plead guilty by a defendant who has since changed his mind. The Court of Appeals[2] in rejecting the "contract" approach to plea bargaining aptly observed that the strong public interest in the rehabilitation of defendants, the protection of society, and the deterring of other potential offenders were considerations which far outweigh the supposed benefits which actually are beyond the contractual power of the individuals concerned.

Again in *Davis* v. *State,* 308 So.2d 27 (Fla. 1975), the

---

[2]The New York court emphasized that any sentence promised at the time of the plea as a matter of law must be conditioned upon its being lawful and appropriate in the light of information contained in the presentence report. We, like New York, have a statute which requires that, in any case where there is a potential punishment of more than a year's imprisonment, the sentencing judge be supplied with a presentence report before the sentence is imposed. General Laws 1956 (1969 Reenactment) §12-19-6. The report is to include such information as may assist the court in fashioning an appropriate sentence. It is obvious from the record that once the sentencing judge had doubts as to the bargain that had been presented to him, any effort to prepare a presentence report went by the boards.

court ruled that, even where a judge who has participated in or tentatively approved a plea bargain decides not to include the contemplated concessions in his final disposition of the case, the defendant may not refuse to withdraw his plea on the grounds that the plea bargain is a specifically enforceable contract. In taking this position, the Florida court alluded to the principle that a judge is charged by law with meting out just punishment and just punishment is that which fits the circumstances of the crime and the particular criminal. The court, while acknowledging the role plea bargaining can play in the expeditious termination of criminal litigation, remarked that making such agreements binding would be exacting too high a price for administrative efficiency.

While there is a tendency to point to instances where the prosecution had been ordered to abide by the terms of its original agreement as a tacit acceptance of the doctrine of specific performance, an analysis of those cases shows that the ultimate holding is based not on contract principles but on the fact that the defendant has been so prejudiced by the repudiation of the agreement that a vacating of the guilty or nolo plea amounts to an exercise in futility. For example, in *State* v. *Thomas,* 61 N. J. 314, 294 A.2d 75 (1972), the defendant as a result of a plea bargain pleaded guilty to a charge of assault and battery and two other related charges were dismissed. The victim died some time after the defendant pleaded to the assault charge but before the dismissal of the other two charges. The defendant was serving an indeterminate sentence at the time of the victim's death. Some time following the death, the defendant was indicted for murder. The New Jersey Supreme Court rejected his plea of double jeopardy but held that the bringing of the murder indictment did violence to the plea agreement. The defendant had already served 18 months of the indefinite

term and was on parole. The court ruled that a vacating of the plea in such circumstances would be unjust because the defendant had been punished for the crime to which he had confessed and his status quo could not be restored. Since there had been full performance of the original bargain by both sides, the court dismissed the murder indictment.

The imposition of a criminal penalty is a demanding duty which obligates the court to analyze all the relevant circumstances and impose a sentence which will best protect society, deter others, and punish or perhaps rehabilitate the offender. *The State Trial Judge's Book* (2d ed. 1969) at 388. The public interest demands that in those instances where plea bargaining goes awry, any search for a remedy should be conducted without any notion of finding fault or seeking retribution. The remedy should no more be a retaliation against the state than it should be a reward for the defendant. *Wynn* v. *State,* 22 Md. App. 165, 322 A.2d 564 (1974). The key concern should be whether the defendant can be returned to the status quo he enjoyed prior to the time he changed his plea. An order calling for fulfillment of the prosecutorial promise should be given only if the defendant has made an affirmative showing that irremediable prejudice has arisen because of the state's default. No such prejudice has been shown by either defendant. The not guilty verdicts returned on the larceny and sodomy charges are concrete evidence that the jury did indeed render fair and impartial verdicts on the four charges that were considered by them.

Since the choice of vacating the plea or directing performance rested in the sentencing justice's sound discretion, I can find no abuse of that discretion. Once he heard of the prosecutorial "goof," and read the relevant files, the duty he owed to society made itself felt. In my opinion

his subsequent actions were not only very responsible but they were in keeping with the highest tradition of the bench.

As there is a divergence of opinion between my brother Doris and me as to defendants' right to insist upon the implementation of the original plea negotiations, so, too, I must with all deference and respect disagree with the Chief Justice's conclusion as to the applicability of the doctrine of double jeopardy and the thrust of our holding in *State* v. *Welch,* 112 R. I. 321, 309 A.2d 128 (1973). Admittedly, in *Nardone* v. *Mullen,* 113 R. I. 415, 322 A.2d 27 (1973), we said that jeopardy attaches upon the acceptance of a nolo plea because "* * * the entry of defendant's plea of nolo was as much a conviction as would have been a jury's verdict of guilty against him * * *." *Id.* at 418, 322 A.2d at 29. Later, in *State* v. *Nardone,* 114 R. I. 363, 334 A.2d 208 (1975), we noted that the rule enunciated in the first *Nardone* case did not preclude the vacating of a deferred sentence[3] and the imposition of a more severe sentence where the original sentence had been procured by fraud, because a plea of double jeopardy could not be based upon a "void judgment."

Last spring, the Supreme Court in *United States* v. *Wilson,* 420 U. S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), once again recognized the threefold protection afforded by the fifth amendment safeguard against double

---

[3]Nardone's habeas corpus petition was based upon his contention that the imposition of the prison sentence violated the constitutional ban against double jeopardy. In both *Nardone* opinions we spoke of the trial justice's right to vacate the deferred sentence and impose a second and more severe sentence. We were not as precise as we should have been. A deferred sentence cannot be vacated for the simple reason that, strictly speaking, a deferred sentence is one that is not imposed unless and until the defendant has violated the terms of his probation agreement. *State* v. *Robalewski,* 96 R. I. 296, 191 A.2d 148 (1963). It might have been better if we had spoken in terms of the Superior Court's ability to set aside the deferred sentence agreement.

jeopardy. This particular constitutional mandate bars a second prosecution for the same offense after conviction, prohibits a second prosecution for the same offense after acquittal, and forbids multiple punishments for the same offense. The Court then went on to hold that where there is no threat of either multiple punishments or successive prosecutions, there is no violation of one's right to be protected from double jeopardy. The Court has also recognized that the double jeopardy provision represents a "constitutional policy of finality" for the defendant's benefit in criminal proceedings. *United States* v. *Jorn,* 400 U. S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

Today most legal scholars take the view that double jeopardy acts as a bar to a completely new prosecution only if a final judgment has been entered in the original proceeding, *State* v. *Sims,* 65 N. J. 359, 322 A.2d 809 (1974), and we have expressed similar sentiments. *State* v. *Beaulieu,* 112 R. I. 724, 315 A.2d 434 (1974).

The rationale for the *Nardone* rule is that ordinarily once a guilty or nolo plea has been accepted, nothing remains but the imposition of punishment. *Nardone* v. *Mullen, supra;* 1 Wharton, *Criminal Law & Procedure* (Anderson ed. 1957) §138, Cum. Sup. (1975 ed.) at 73.

The rule adopted in *Nardone* presupposes that punishment will follow as a matter of course. However, no punishment was ever imposed by the sentencing judge during any time these cases were before him in February and March of 1973. We have in the past ruled that the imposition of sentences is in a manner of speaking the final and conclusive judgment of a court. *State* v. *Garnetto,* 75 R. I. 86, 63 A.2d 777 (1949); *see also State* v. *Taylor,* 108 R. I. 114, 272 A.2d 680 (1971). In *State* v. *Nardone, supra,* we said that a plea of double jeopardy could not rest on a judgment that was void because it was based on fraud. Consequently, in order to trigger the bar of

double jeopardy, there must be some finality to the initial adjudication whereby an accused can properly maintain that the state is seeking to try or punish him again for a crime which has been the subject of a previous final disposition. Neither defendant can make such a claim.

Finally, I shall attempt to put *Welch* in what I believe is its true perspective. As I read *Welch*, it does not stand for the proposition that a judge is estopped from imposing a stiffer sentence once he vacates a sentence that he had previously imposed on a defendant such as Welch. Welch had entered his nolo plea because in good faith he had believed that the sentencing justice would abide by the prosecutor's recommendation that Welch be given an 18-month sentence that would run concurrently with the one he was presently serving. The sentencing justice declined to accept the prosecutor's recommendation and refused Welch's request that the nolo plea be withdrawn and went on to impose a suspended sentence of 18 months. We ruled that in these circumstances Welch's plea could not be considered as having been given voluntarily. We quashed the denial of the motion to vacate and remanded the case to the Superior Court for a vacating of the nolo plea, but at no point did we rule that if and when Welch was ever sentenced on that particular charge that the maximum sentence he could receive would be 18 months.

*Santobello* lays the groundwork for the procedures to be followed whenever the agreement has been dissolved. A defendant, if he wishes, can stand on his guilty plea and be sentenced by another judge or if the plea is vacated, he will plead anew to all of the original charges, including those the state had nol prossed. *Santobello* v. *New York, supra,* 404 U. S. at 263 n. 2, 92 S.Ct. at 499 n. 2, 40 L.Ed.2d at 433 n. 2. The Superior Court justice after vacating the original pleas did not reinstate the original robbery charge because he felt that since under Rhode

Island law an indictment can only be amended with the consent of the accused, the larceny charge would have to remain.

In summary, then, I can perceive no constitutional basis for invalidating the jury verdicts entered against the defendants.

Joslin, J., dissenting. While I join in my Brother Kelleher's dissent, I feel compelled to state briefly my views on how to resolve the dilemma resulting from the trial justice's ill-advised participation in the negotiation procedures and his subsequent disavowal of his bargain with the defendants.

Our options are limited. We can, on the one hand, insist that the trial justice abide by his promise even though to do so means that defendants will avoid punishment commensurate with the seriousness of their crimes. Alternatively, we can insure against defendants' escaping relatively unscathed by sanctioning the trial justices' reneging on a promise which undoubtedly was a pervasive influence in inducing them to foresake jury trials and to plead nolo.

While the result of either choice will reflect adversely on the integrity of the judicial system, it seems to me that in these peculiar circumstances less disservice will be done by not faulting the sentencing justice for going back on his word so long as concommitantly he afforded the defendants an opportunity to withdraw their nolo pleas. *See* ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pleas of Guilty* 1 (Approved draft, 1968).

Mr. Chief Justice Roberts participated in the decision but retired prior to its announcement.

Motion to reargue denied.

*Julius C. Michaelson,* Attorney General, *John Austin Murphy,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Peter DiBiase,* Asst. Public Defender, for defendants.