STATE

v.

F. David FENG.

No. 77–274–M.P.

Supreme Court of Rhode Island.

Oct. 8, 1980.

Dennis J. Roberts II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, for defendant.

## OPINION

MURRAY, Justice.

The applicant F. David Feng appeals from denial of his application for postconviction relief, filed pursuant to G.L. 1956 (1969 Reenactment) § 10–9.1–1 through § 10–9.1–9, as enacted by P.L. 1974, ch. 220, § 3. He challenges his convictions, asserting, among other claims, that they rest on invalid pleas of nolo contendere. He requests this court to vacate the pleas and to reinstate his earlier pleas of not guilty.

In the spring of 1975, applicant Feng and his college roommate, Steven C. Root, sold 100 capsules of the controlled substance phendimetrazine to a federal undercover agent. At the time of the sale, Feng and Root agreed to procure large quantities of other drugs for the agent. The agent and an unnamed informant reported the sale and the negotiations for future sales to the Providence police department. Acting on that information, the department obtained a warrant to search the dormitory room shared by Feng and Root, and the search uncovered a variety of drugs in substantial quantities.

The state later indicted Feng and Root, charging each with four counts of violating chapter 28 of title 21 of the 1956 General Laws.[1] In a separate indictment the state

---

1. The state charged both men with three counts of violating G.L. 1956 (1968 Reenactment)

§ 21–28–4.01, as enacted by P.L. 1974, ch. 183, § 2: possession of marijuana with intent to

charged a third student, Randall L. Walters, of drug offenses unrelated to those of Feng and Root. After the Providence police arrested the three men, they engaged the same attorney for their defense. Feng, Root, and Walters each pleaded not guilty when arraigned in November 1975.

The attorney hired by the three students conducted discovery and also negotiated with the state to change their previous pleas of not guilty to nolo contendere. Counsel reached an agreement with the state that Feng and his codefendants accepted. They subsequently appeared before a Superior Court justice and sought to withdraw their pleas of not guilty. At the plea hearing, Feng, Root, and Walters each submitted an affidavit stating that he understood, and waived voluntarily, the rights inhering in a plea of not guilty. The trial justice questioned each defendant individually to determine whether each understood the affidavit's contents. The trial justice then accepted pleas from each defendant of nolo contendere to all counts of the indictments.

He later sentenced Feng and Root to one year in prison on the count of possession with intent to deliver a controlled substance. He deferred sentence on the remaining counts of their respective indictments. The trial justice ordered Walters incarcerated for one year for delivery of a controlled substance and deferred Walter's sentence, as he did with that of the other two men, on the remaining charges. He then stayed execution of each man's sentence for one year.

Prior to expiration of the stay, Feng became dissatisfied with the attorney who had represented him at the plea hearing. He retained new counsel who filed an application for postconviction relief. In his application, Feng attacked his convictions on several grounds.[2] He presented his arguments to the same justice who had conducted the plea hearing. The justice denied Feng's application, finding that he had filed it in bad faith. In addition, the justice revoked Feng's deferred sentence on the charge of possession of a controlled substance and imposed a two–year sentence consecutive to Feng's one–year term.

Feng appealed separately to this court from the denial of his application for postconviction relief and from the imposition of the additional two–year sentence. Upon motion, the trial justice released Feng on bail pending appeal of the imposition of the additional sentence, but refused to grant a further stay of the original one–year sentence and ordered Feng committed to the Adult Correctional Institutions.

While his appeal from the denial of his application for postconviction relief was pending, Feng applied to this court for bail. He urged us to consider the implications of our observation in *State v. Abbott*, 117 R.I. 214, 220, 366 A.2d 1132, 1135 (1976) (*Abbott II*) that "[T]his court has never granted bail to an individual who has sought what for all intents and purposes is post conviction relief."

We decided to examine the question of bail pending review of an application for postconviction relief. The short length of Feng's prison term necessitated his release to avoid rendering the bail question moot.[3]

deliver, possession of a controlled substance (lysergic acid diethylamide) and possession of a controlled substance with intent to deliver (cocaine). The state also charged the men with maintaining a common nuisance as prohibited by G.L. 1956 (1968 Reenactment) § 21–28–4.06, as enacted by P.L. 1974, ch. 183, § 2.

2. The following are Feng's claims: (1) He did not voluntarily and intelligently plead nolo contendere to each count of the indictment; (2) He was inadequately represented by counsel at the plea hearing because of counsel's conflict of interests; (3) The Attorney General breached its plea agreement, rendering the plea involuntary; (4) He did not waive his right to challenge the legal sufficiency of the search of his dormitory room; (5) The search was legally defective; (6) The court imposed an illegal sentence.

3. We recognize that a decision on the merits of Feng's appeal also renders the bail issue moot. We decide the issue, however, because we perceive a compelling public interest in its final resolution. *See Bridges v. Superior Court*, R.I., 396 A.2d 97 (1978).

We therefore issued a writ of habeas corpus to secure custody of Feng and then admitted him to bail. *Feng v. Laurie*, R.I., 377 A.2d 351 (1977).

### I.

█ Although our state constitution confers no right to bail following a conviction, *City of Warwick v. Robalewski*, R.I., 385 A.2d 669 (1978); *Quattrocchi v. Langlois*, 100 R.I. 741, 219 A.2d 570 (1966), we have designated bail pending direct appeal as a matter in the trial court's sound discretion. *Id.* In *State v. Abbott*, 113 R.I. 430, 322 A.2d 33 (1974) (*Abbott* I), we set guidelines for the trial court to follow when it assesses applications for bail pending direct appeal.[4]

█ Feng requested this court to set guidelines similar to those stated in *Abbott* I, that this court will follow when faced with a petition for bail of applicants who appeal from a denial of postconviction relief. We first dealt with the question of bail pending appeal of an application for postconviction relief in *Abbott* II. In *Abbott* II, the same defendants involved in *Abbott* I applied to this court pursuant to Rule 9 of the Supreme Court Rules for bail pending appeal of their convictions on remand. This court denied their application without explanation, which denial prompted them to seek habeas relief in the Federal District Court. It granted the relief requested but it stayed enforcement of the writ for ten days to allow this court to either grant bail or issue "a statement of findings of fact that [would] enable a reviewing court to determine whether or not such denial was arbitrary." *Abbott v. Laurie*, 422 F.Supp. 976, 981 (D.R.I.1976). We explained in *Abbott* II that the defendant's

convictions rested on pleas of nolo contendere reinstated by this court in *State v. Freeman*, 115 R.I. 523, 351 A.2d 824 (1976). We "questioned the propriety of defendants' using appeals"[5] to attack their convictions and instead treated the matter as if the defendants appealed from a denial of an application for postconviction relief. *Abbott* II, 117 R.I. at 219, 366 A.2d at 1134. We observed that Rule 9, under which the defendants sought bail, did not empower this court to release them because we determined that it related only to "an appeal which follows a guilty verdict after trial." *Abbott* II, 117 R.I. at 218, 366 A.2d at 1134. Under those circumstances, we refused bail because we had "never granted bail to an individual who has sought what for all intents and purposes is post conviction relief." *Id.* at 220, 366 A.2d at 1135.

Although we have consistently followed that policy, *see State v. Giorgi*, R.I., 382 A.2d 535 (1978), and *State v. Williams*, R.I., 382 A.2d 536 (1978), our ruling in *Abbott* II does not necessarily signify that upon analysis of that practice we would be without power to grant bail pending review of an application for postconviction relief. Thus, our ruling in *Abbott* II does not bar exploration of sources other than Rule 9 for the power to grant bail to an applicant pending appellate review of an application for postconviction relief. Indeed, our power to promulgate and enforce Rule 9 is derived from our inherent judicial power as supplemented by G.L. 1956 (1969 Reenactment) § 8–6–2, as amended by P.L. 1975, ch. 222, § 1.

Although the Post–Conviction Remedy Act is silent with respect to bail, Feng asserts that the Legislature impliedly adopted the *ABA Standards Relating to*

---

4. We stated in *State v. Abbott*, 113 R.I. 430, 432, 322 A.2d 33, 35 (1974):

"Consideration should be given to (1) whether the appeal is taken for delay or in good faith on grounds not frivolous but fairly debatable; (2) the habits of the individual regarding respect for the law insofar as they are relevant on the question of whether an applicant's release would pose a threat to the community; (3) local attachments to the community by way of family ties, business or

investment; (4) the severity of the sentence imposed, and circumstances relevant to the question of whether a defendant would remove himself from the jurisdiction of the court."

5. A plea of guilty or nolo contendere to a charged offense operates as a waiver of the defendant's right to appeal his conviction of that offense. *State v. Williams*, R.I., 404 A.2d 814 (1979).

*Post–Conviction Remedies* (approved draft, 1968) in its enactment of the remedy.[6] He reasons syllogistically as follows: (1) The Second Revised Uniform Post–Conviction Procedure Act incorporates all of the ABA standards. (2) The Rhode Island Post Conviction Remedy Act is modeled on the Uniform Act. (3) The Rhode Island act therefore incorporates the ABA standards also because it is modeled on the Uniform Act.

 We reject Feng's construction of the Rhode Island act on two grounds. First, our Legislature enacted the postconviction remedy in 1974.[7] It could have expressly adopted the ABA standard if it had so desired. The Legislature's failure to include ABA Standard 4.3(c) operates as an implicit rejection of the provision, rather than an implicit acceptance. We shall not interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication. *Coastal Finance Corp. v. Coastal Finance Corp. of North Providence*, R.I., 387 A.2d 1373, 1378 (1978); *New England Die Co. v. General Products Co.*, 92 R.I. 292, 298, 168 A.2d 150, 154 (1961). In enacting the postconviction remedy the Legislature sought to provide a scheme for collateral attack of final convictions. The legislation will not fail of its essential purpose if we do not infer a bail or recognizance provision. We therefore reject Feng's contention that the Legislature impliedly adopted ABA Standard 4.3(c).

 Second, we need look no farther than Feng's major premise to reject his interpretation of the Rhode Island act. Initial approval of the Uniform Act by the ABA in 1966 does not mean that the Uniform Act incorporates all of the *Standards Relating to Post–Conviction Remedies*. Rather, the ABA supplemented its initial approval of the act with adoption of the standards in 1968. Moreover, the ABA report contains a comprehensive analysis of

the distinctions between the ABA standards and the Uniform Act. *See ABA Standards Relating to Post–Conviction Remedies*, Appendix B. The ABA Advisory Committee concluded that the Uniform Act would require substantial changes to "better implement the recommended minimum Standards." *Id.* at 102. Thus, on either ground we decline to infer that the Rhode Island act incorporates ABA Standard 4.3(c). We thus look to non–statutory sources.

Article 12 of the amendments to the Rhode Island constitution confers upon this court the power to issue prerogative writs. In this case we invoked our inherent authority under article 12 and issued a writ of habeas corpus to release petitioner Feng on bail while we reconsidered the bail policy announced in *Abbott* II. *Feng v. Laurie, supra*. In the absence of statutory authority, we look to the appurtenances to the writ of habeas corpus at common law for the power to bail applicants pending review of applications for postconviction relief.

Our survey of cases from other jurisdictions indicates that courts had inherent authority at common law to grant bail pending a determination on the merits of a collateral attack on a final conviction. In *Johnston v. Marsh*, 227 F.2d 528 (3d Cir. 1955), the court upheld the jurisdiction of a Federal District Court to grant bail to a prisoner challenging the validity of his conviction in habeas proceedings. The court there stated,

"One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable. It is clear that at common law courts had inherent power to grant bail. *See, e. g., Queen v. Spilsbury*, [1898] 2 Q.B. 615, 620. This authority was exercised in habeas corpus cases pending decision on the merits." *Id.* at 531 (quoted in *Jago v. United*

---

**6.** ABA Standard 4.3(c) of the *ABA Standards Relating to Post–Conviction Remedies* (approved draft, 1968) states:

"Courts should have the power to order executions stayed or to release applicants on

recognizance or with sufficient sureties in appropriate cases, pending final disposition of applications for postconviction relief."

**7.** Public Laws of 1974, ch. 220, § 3.

States District Court Northern District of Ohio, Eastern Division at Cleveland, 570 F.2d 618, 622 (6th Cir. 1978)).

See *Shamblin v. Hey*, W.Va., 256 S.E.2d 435 (1979) (court had inherent authority to grant bail to prisoners challenging validity of conviction, although West Virginia post–conviction habeas corpus statute was silent with respect to bail); *Rose v. Nickerson*, 29 Conn.Supp. 81, 271 A.2d 855 (1970) (court vested with common–law powers had inherent power to bail a habeas petitioner challenging validity of an order revoking his parole). *See also Hensley v. Municipal Court, San Jose–Milpitas Judicial District*, 411 U.S. 345, 352, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294, 300–01 (1973); *United States ex rel. Carapa v. Curran*, 297 F. 946, 954 (2d Cir. 1924); *Barth v. Clise*, 79 U.S. 400, 12 Wall. 400, 20 L.Ed. 393 (1871).

■ In light of those authorities, we conclude that our authority to issue prerogative writs under R.I.Const., amend. XII, includes the power to grant bail pending review of a habeas petition that challenges the validity of a final conviction.[8] Since enactment of the Post Conviction Remedy Act, however, we no longer review final convictions through issuance of the writ of habeas corpus. *State v. DeLomba*, 117 R.I. 673, 674, 370 A.2d 1273, 1274 (1977); *see State v. Lanoue*, 117 R.I. 342, 344, 366 A.2d 1158, 1160 (1976). We ruled in *Palmigiano v. Mullen*, R.I., 377 A.2d 242, 248 (1977), that substitution of the act for habeas corpus, as the vehicle for attacking a final conviction, effected a change in procedure but not in substance. *State v. Duggan*, R.I., 414 A.2d 788 (1980). For purposes of granting bail, we shall therefore treat an appeal from a denial of an application for postconviction relief as equivalent to a denial of a writ of habeas corpus following a final conviction. Thus, our inherent power to grant bail pending review of a habeas

challenge to a final conviction is incorporated in a review of the merits of an application for post–conviction relief. Hence, an applicant who seeks release pending appellate review of an application for postconviction relief should move this court to admit him to bail.

■ Such motions will be considered subject to our previously announced policy that our power to admit to bail shall be sparingly exercised on appeal from a denial of postconviction relief. We consider bail after an unsuccessful direct appeal of a conviction an extraordinary measure. The right to bail prior to trial rests on the presumption of innocence enjoyed by the accused. *Quattrocchi v. Langlois*, 100 R.I. at 744, 219 A.2d at 573. Pending adjudication of an application for postconviction relief, however, "There is not even that lingering scintilla of a presumption of innocence which under more modern reasoning attends the defendant as he wends his way through the formal appeal process." *Shamblin v. Hey*, W.Va., 256 S.E.2d at 437. *See Abbott* I, *supra.* The court in *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972) found the lack of presumption of innocence, combined with the state's interest in enforcing the conviction, "a formidable barrier for those who seek interim release while they pursue their collateral remedies."

In *Aronson v. May*, 85 S.Ct. 3, 13 L.Ed.2d 6 (1964), Justice Douglas, sitting as a single justice, considered the bail question in a similar procedural posture. The Federal District Court denied Aronson's petition for a writ of habeas corpus in which he sought reversal of convictions for mail fraud and conspiracy. He applied unsuccessfully for bail pending appeal of that decision in both the District Court and the Court of Appeals. Aronson then pressed his bail application in the United States Supreme Court pursuant to U.S.Sup.Ct.R. 49(a) as it then existed.

8. We recognize that the cited authorities discuss the power of trial courts vested with common law habeas powers to grant bail prior to adjudication of a collateral attack on a final conviction. We look to those cases because R.I.Const., amend. 12 vests common–law habeas powers in this court. Although we are not

concerned in this case with the power to grant bail prior to adjudication of a habeas attack on a final conviction, we consider those cases persuasive authority for our ruling that this court has power to grant bail prior to disposition on appeal of such a challenge.

Justice Douglas also denied Aronson's bail request stating,

"It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case * * * it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice." *Id.*, 85 S.Ct. at 5, 13 L.Ed.2d at 9.

We agree with Justice Douglas that bail pending appeal of an unsuccessful collateral attack on a final conviction should be granted only in exceptional cases. Indeed, if there is "not even [a] lingering scintilla of a presumption of innocence" prior to a hearing on an application for postconviction relief, *Shamblin v. Hey*, W.Va., 256 S.E.2d at 437, there is even less reason to grant bail after postconviction relief has been denied. We shall therefore require an applicant who requests bail to show that incarceration pending review of his application for postconviction relief would be manifestly unjust. As a practical matter, however, we envision few cases in which the Superior Court will have denied postconviction relief if the applicant presents on appeal such a strong case for relief that his continued incarceration is clearly unjust.

## II

Feng challenges his convictions on several grounds. He focuses primarily on Rule 11 of the Superior Court Rules of Criminal Procedure[9] and contends that his pleas of nolo contendere are invalid because the trial justice who accepted them failed to comply with the rule. According to Feng, the trial justice did not ascertain whether he understood the charges or the consequences of the plea. He claims also that judgment was entered on the pleas without a factual basis. He asserts, therefore, that denial of his application for postconviction relief constitutes error requiring reversal by this court.

## A

The decision to plead nolo contendere is an important one. In Rhode Island a nolo plea is equivalent to a plea of guilty. *Johnson v. Mullen*, R.I., 390 A.2d 909 (1978); *Nardone v. Mullen*, 113 R.I. 415, 322 A.2d 27 (1974). Thus, the decision to plead nolo contendere is an important one. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A defendant entering such a plea "waives several federal constitutional rights and consents to judgment of the court." *Johnson v. Mullen*, R.I., 390 A.2d at 912.[10] Thus, the Constitution requires that a court which accepts a plea of guilty or nolo must determine that the defendant offers the plea voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The Superior Court adopted Rule 11 to formalize procedures for attainment of that constitutional requirement. Rule 11 requires that the trial court shall not accept a plea of guilty or nolo contendere "without first addressing the defend-

---

**9.** Rule 11 of the Superior Court Rules of Criminal Procedure provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

**10.** A defendant pleading guilty or nolo contendere waives the right to trial by jury, the presumption of innocence, the state's burden to prove him guilty beyond a reasonable doubt, the privilege against self-incrimination, the right to confront and cross-examine accusers, the right to testify and call witnesses in his behalf, and the right to appeal a conviction to this court. *State v. Williams*, R.I., 404 A.2d 814, 818 (1979).

ant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." The rule does not specify the extent or content of the colloquy. We have ruled, however, that the trial court should engage in as extensive an interchange as necessary so that "the record as a whole and the circumstances in their totality" will disclose to a court reviewing a guilty or nolo plea that the defendant understood the nature of the charge and the consequences of the plea. *State v. Williams*, R.I., 404 A.2d 814, 820 (1979). The record must affirmatively disclose the voluntary and intelligent character of the plea because a valid waiver of constitutional rights cannot be presumed from a silent record. *Boykin v. Alabama, supra.*

The record in this case reveals that the trial justice did not undertake a lengthy examination of petitioner concerning the nature of the charges or the consequences of the plea. The state contends, however, that the record discloses a colloquy sufficient to show the voluntary and intelligent character of Feng's plea.

In his colloquy with Feng, the trial justice relied on an affidavit executed by Feng in which Feng averred that he understood and waived voluntarily the rights inhering in a plea of not guilty.[11] His reliance on that affidavit appears clearly in the few questions he asked of Feng:

"THE COURT: How about you, Mr. Feng? I have this affidavit and attorney certification which appears to have the name of F. David Feng executed apparently, before Mr. Fortunato. Is that your signature?

DEFENDANT FENG: Yes, your Honor.

THE COURT: And did you read the document before you signed it?

DEFENDANT FENG: Yes, sir.

THE COURT: Did you fully understand the rights that you have as contained in that document?

DEFENDANT FENG: Yes, your Honor.

THE COURT: Do you understand the consequences of giving up those rights?

DEFENDANT FENG: Yes, sir.

THE COURT: You appreciate the fact that if I accept your plea of nolo as to each of these counts, all that remains for the Court to do is to impose sentence?

DEFENDANT FENG: Yes, sir.

THE COURT: Do you appreciate the fact that the probability is that the Court may send you to jail?

DEFENDANT FENG: Yes, your Honor.

\* \* \* \* \* \*

THE COURT: Mr. Feng, do you consider that the State has a capability of submitting sufficient facts to a jury to convict you on every one of the counts?

DEFENDANT FENG: Yes, sir."

Although the trial justice obviously addressed Feng personally, the question remains whether he elicited sufficient information during the colloquy to demonstrate upon review that Feng understood the nature of the charges and the consequences of his nolo plea.

In *State v. Williams, supra,* we first considered the form of the affidavit used in this case in relation to Rule 11. Williams claimed that the trial justice who accepted her plea of guilty had not satisfied Rule 11. She construed Rule 11 to require the court to test her understanding of the charges specifically through personal examination. According to Williams, Rule 11 could not be satisfied absent an express on–the–record discussion of the charges.

Although the record in Williams did not "affirmatively show that the trial justice engaged in an extensive interchange with the accused" concerning the charges, the record as a whole and the circumstances in their totality disclosed that the defendant understood the nature of the charges. *Id.* 404 A.2d at 820. The record indicated that

---

11. Feng executed a form affidavit, available to attorneys in the Superior Court. The form also contains a certification by Feng's counsel that

he explained the affidavit to Feng. A copy of that document is appended to this opinion.

Williams submitted to the court an affidavit averring that she admitted "'sufficient facts to substantiate the charge[s] * * * brought against [her] in the indictment[s] * * *.'" *Id.* The record disclosed that her attorney then assured the court that he had "very carefully" explained the significance of the affidavit to Williams. Williams herself testified under oath that she had reviewed the affidavit with counsel "word-for-word" and understood its contents. Finally, Williams admitted specific facts at the plea hearing that, even if viewed in the light most favorable to her, would have supported her being convicted of the offenses charged. Viewing that record as a whole, we concluded from those elements that the court had complied with Rule 11 in determining that Williams understood the nature of the charges.

■ Although we approved use of the affidavit in *Williams,* we did note its potential character as a "kind of boilerplate litany" not tolerated by *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). *Id.*[12] The affidavit clearly contemplates that an attorney will have explained the rights enumerated therein to the defendant. Reliance on an out–of–court explanation without assurance in the record that an explanation in fact occurred results in noncompliance with Rule 11. *See United States v. BoatRight,* 588 F.2d 471, 474 (5th Cir. 1979) (quoting *United States v. Adams,* 566 F.2d 962, 968 (5th Cir. 1978)); *Horsley v. United States,* 583 F.2d 670, 672 (3d Cir. 1978), *cert. denied,* 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979); *United States v. Wetterlin,* 583 F.2d 346, 350 (7th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979); *United States v. Del Prete,* 567 F.2d 928, 930 (9th Cir. 1978).

■ In *Williams,* the trial justice questioned Williams and her attorney to determine whether the out–of–court explanation of the charges, sworn to by Williams and certified by her attorney, actually occurred. That on–the–record verification of the averments contained in the affidavit assured this court on review that for purposes of Rule 11 the trial justice had adequately demonstrated that Williams did indeed understand the charges to which she pleaded guilty. The questions posed by the court in this case explored only whether Feng had read the affidavit. The court did not inquire of Feng or his attorney if the attorney had, as stated in the affidavit, explained fully the nature of the charges and the consequences of a nolo plea to Feng. In light of the distinctions between this record and that in *Williams,* we must examine the record for additional circumstances indicating that an out–of–court explanation of the nature of the charges and the consequences of the plea did in fact occur.

In this case, Feng's education is an important factor in our assessment of the validity of his nolo pleas. *Cf. Commonwealth v. Huot,* —— Mass. 977, 403 N.E.2d 411 (1980) (where the court found defendant to have an IQ of 151). A defendant's ability to read and understand the English language does not invariably indicate that he will understand without further explanation the legal rights enumerated in the affidavit. The affidavit, however, is not composed solely of legal concepts. It states at the outset that "I * * * do hereby make affidavit upon oath and say that I have been advised and have been explained fully by my attorney _____ regarding the nature of the charge and the consequences of the plea of *GUILTY* and *NOLO CONTENDERE.*"

We believe that a literate defendant with a college education can readily comprehend the statement that his attorney has explained to him the nature of the charge and the consequences of the plea. A college–educated defendant who is willing to swear to

---

12. In *State v. Williams,* R.I., 404 A.2d 814, 818–19 (1979) we determined that the Supreme Court in *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), "agreed with the thrust of the petitioner's argument that the voluntariness of a plea should not be determined by whether 'a ritualistic litany of the formal legal elements of an offense was read to [a] defendant,' but by examining 'the totality of the circumstances' and determining 'whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused.' *Id.* at 644, 96 S.Ct. at 2257, 49 L.Ed.2d at 114."

such a statement provides the trial court with a reliable indication that the out-of-court explanation, attested to in the affidavit, has actually occurred. Viewed in light of Feng's level of literacy, the court's queries, "[i]s that your signature?" and "[D]id you read the [affidavit] before you signed it?" in effect verified that Feng's attorney explained to him the nature of the charges and the consequences of his nolo pleas. The trial court further explored Feng's comprehension of the pleas by asking if he fully understood the rights enumerated in the affidavit and if he appreciated the consequences of pleading nolo contendere. Feng's affirmative replies provided the trial court with a basis to conclude that he understood his attorney's explanation of the nature of the charges and the consequences of his nolo pleas. We conclude from our review of the record as a whole and the circumstances in their totality that Feng understood the nature of the charges and the consequences of his nolo pleas. Neither the Constitution, nor Rule 11 requires more to sustain the validity of Feng's nolo pleas. *State v. Williams*, R.I., 404 A.2d at 820.

B

Feng claims that the trial justice did not comply with Rule 11's mandate that "[t]he court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea." He contends that the trial justice improperly relied on a single question to elicit the existence of a factual basis for his pleas to the indictment and thereby committed reversible error.

Feng concedes that Rule 11 permits the trial court to make the required factual determination at any time prior to imposition of sentence. *See United States v. Bradin*, 535 F.2d 1039 (8th Cir. 1976). He concedes also that the trial court may rely on any of several sources to establish the factual basis, including a colloquy between the defendant and the trial justice; a prosecutor's recitation of the state's evidence, *State v. Williams, supra*; or a presentence report delineating the defendant's conduct, *United*

*States v. Bradin, supra*. According to Feng, however, the language in Rule 11 that the court must be "satisfied that there is a factual basis" imposes a subjective standard for determining whether a factual basis for a plea exists. He argues, therefore, that a reviewing court must limit its examination to the information expressly relied on by the trial court to establish a plea's factual basis. In Feng's view, we are bound to vacate his nolo pleas because the trial justice was apparently satisfied that a factual basis existed solely on the strength of Feng's affirmative response to the question, "[D]o you consider that the state has a capability of submitting sufficient facts to a jury to convict you * * *?"

We agree that Rule 11 implies a subjective standard for determining whether a factual basis exists, but we reject Feng's proposed limitations on the scope of our review. The Superior Court adopted Rule 11 to safeguard the rights of criminal defendants who plead guilty or nolo contendere; it did not intend that the rule serve as a trap for those justices who fail to enumerate each fact relied on to accept such a plea. In reviewing whether a trial justice could have been satisfied for purposes of Rule 11, we shall examine the record for all indices that a guilty or nolo plea was based on fact. We shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual basis existed for a defendant's plea. Thus if the record in this case discloses other facts from which the trial justice could have been satisfied that a factual basis existed for Feng's nolo pleas, we need not consider whether Feng's assent to the trial justice's question was by itself sufficient for that purpose.

The record in this case contains few references to Feng's actual conduct. The state contends, however, that the presentence reports prepared in this case contained facts sufficient to satisfy the trial justice that each of Feng's nolo pleas had a factual basis. Feng's presentence report summarizes the police version of events im-

mediately preceding his arrest and also lists the controlled substances seized in a search of his dormitory room. Though hardly a model of specificity, we believe that the statement that the police "seized a large quantity of cocaine, marijuana, CNS, hashish, and other narcotic implements" establishes a sufficient factual basis to sustain Feng's pleas to possession of marijuana and cocaine with intent to deliver.

In sustaining the trial justice's acceptance of Feng's plea to maintaining a common nuisance in violation of G.L. 1956 (1968 Reenactment) § 21–28–4.06,[13] we look to the presentence report on Feng's codefendant, Steven Root. That report contains Root's statement concerning his and Feng's numerous transactions in narcotics. He described the fraternity house in which they lived as a "clearing house for drugs." According to Root's statement, "Feng was short of money and started dealing and when the money looked very good he turned to Def. Root for financing as Root had the money and larger quantities could be purchased." Root's statement, viewed in conjunction with the police summary of the items seized in the room shared by Feng and Root, disclosed to the trial justice sufficient facts from which he could have been satisfied that a sufficient factual basis existed for Feng's plea to maintaining a common nuisance as defined in § 21–28–4.06.

We are more troubled by Feng's plea to possession of the controlled substance lysergic acid diethylamide (LSD). The record contains no direct indication that Feng actually possessed that substance. The police did not seize any LSD when they searched his dormitory room; nor did they find LSD on his person. The statement contained in Root's presentence report does not refer to possession of, or transactions involving LSD.

Our examination of the record discloses only allusions to the facts constituting the basis of Feng's plea to possession of LSD.

At the plea hearing the trial justice summarized the charge stating, "This is a knowledge and intent to possess a controlled substance. 21–28–4.01–(c)–1–(a) [21–28–4.01(C)(1)(a)]." He subsequently inquired of Feng, "[D]o you consider that the State has a capability of submitting sufficient facts to a jury to convict you on every one of the counts?" Additionally, the affidavit executed by Feng provides, "I also understand that for purposes of this case I am admitting sufficient facts to substantiate the charge(s) which has (have) been brought against me in the indictment(s) to which these pleas relate."

Several courts have indicated that a trial court may satisfy itself that an adequate factual basis exists for purposes of Rule 11 if it reads the indictment to the defendant and the defendant admits the charged conduct. *Sassoon v. United States,* 561 F.2d 1154 (5th Cir. 1977), *supra; Seiller v. United States,* 544 F.2d 554 (2d Cir. 1975); *Kloner v. United States,* 535 F.2d 730 (2d Cir. 1976), *cert. denied,* 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 312 (1976); *Bachner v. United States,* 517 F.2d 589 (7th Cir. 1975). An indictment may be used to establish a factual basis, however, only if the offense charged is "straightforward and the elements of the crime are clearly set out." *Seiller v. United States,* 544 F.2d at 565; *accord Jimenez v. United States,* 487 F.2d 212 (5th Cir. 1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974), *reh. denied,* 416 U.S. 1000, 94 S.Ct. 2415, 40 L.Ed.2d 778 (1974). The rationale of those cases appears to be that reading a straightforward indictment to a defendant will inform him of the specific conduct underlying the offense with which he is charged. The trial justice may then rely on a defendant's admission of that conduct to satisfy himself that a factual basis exists for his guilty or nolo plea.

The trial justice in this case did not read the indictment to Feng; he merely

---

**13.** General Laws 1956 (1968 Reenactment) § 21–28–4.06 provides in pertinent part:

"Any store, shop, warehouse, building, vehicle, aircraft, vessel or any place whatever which is used for the unlawful sale, use or keeping of a controlled substance shall be deemed a common nuisance."

summarized the charge as "knowledge and intent to possess a controlled substance." Reference to "a controlled substance" does not by itself set out the elements of the offense of possession of the particular controlled substance LSD. The list of controlled substances contained in chapter 28 of title 21 is exhaustive. Unlawful possession of more than one controlled substance constitutes a separate offense for each such substance possessed. We note also that at the time of Feng's arrest, several controlled substances were seized from his dormitory room, and the indictment itself charged Feng with possession of another controlled substance—cocaine. In light of the wide range of substances classified as "controlled", we conclude that the trial justice's summary of the charge did not constitute a straightforward statement of the facts underlying the offense of possession of LSD.

Although the trial justice did not read the indictment during his colloquy with Feng, he had before him Feng's affidavit that contained the averment: "I also understand that for purposes of this case I am admitting sufficient facts to substantiate the charge[s] which has [have] been brought against me in the indictment[s] to which these pleas relate." Viewing the situation in light of Feng's intelligence and education, the trial justice could have inferred from that averment that Feng had read the indictment or reviewed it with his attorney. He could therefore have assumed without having read the indictment to Feng that Feng was familiar with the state's factual allegations concerning his purported possession of LSD.

We observe that the count charging Feng with possession of LSD is straightforward and sets out clearly the elements of that offense. It provides: "David F. Feng [sic] * * * did unlawfully, with knowledge and intent possess a controlled substance to wit, Lysergic Acid Dithylamide [sic], as set forth in Schedule I of Section 21–28–2.08 of the general laws, as amended, in violation of Section 21–28–4.01(C)(1)(a) of the general laws, as amended."

Thus, viewed in conjunction with the inference that Feng had read the indictment, his assent to the query "[D]o you consider that the State has a capability of submitting sufficient facts to a jury to convict you on every one of the counts?", in effect constituted an admission to the conduct set forth in the count charging him with possession of LSD. Under the circumstances of this case, therefore, the trial justice could have relied on the indictment together with Feng's implicit admission of the conduct alleged in the affidavit to satisfy himself that Feng's plea was based on fact.

### III

In addition to his claims based on Rule 11, Feng asserts several other grounds for vacating his pleas. He has renewed on appeal his claims that the state breached an agreement that "partially induced" him to plead nolo contendere, that the Providence police searched his dormitory room pursuant to an invalid search warrant, and that he was deprived of the safeguards provided by the Sixth Amendment because the trial justice did not inform him of the risks involved in his attorney's concurrent representation of Root and Walters.

### A

In *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971), the Supreme Court ruled that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *State v. Freeman*, 115 R.I. at 532, 351 A.2d at 828. Relying on *Santobello* and *State v. Freeman*, Feng asserts that we must vacate his sentences because the state breached a plea agreement that induced him to change his not–guilty pleas to nolo contendere.

Our review of the record reveals that Feng has addressed his contentions on this issue solely to the plea agreement concluded between the state and Randall Walters. Although similar, the plea agreement between the state and Feng differs from Wal-

ters's agreement in several material respects. Thus, Feng has neither briefed nor argued his contentions with respect to the state's alleged breach of its plea agreement with him. We therefore consider those contentions waived. *DaRosa v. Carol Cable Co.*, R.I., 397 A.2d 506 (1979).

### B

Feng contends that his pleas of nolo contendere do not operate as a waiver of his right to question the constitutionality of the search of his dormitory room in postconviction proceedings. Our examination of the record discloses, however, that Feng has not properly preserved that question for our review. Although he raised the question of the legality of the search in his application for postconviction relief, Feng's counsel stated at the hearing on that application: "as I read case law, as to a plea of nolo contendere, a plea of guilty, if it's voluntarily and intelligently given, that would foreclose his right to pursue a claim as to unlawful search and seizure." The trial justice expressly relied on that representation to defer consideration of the Fourth Amendment claim until he resolved Feng's contentions concerning the validity of his nolo pleas. Once he determined that Feng had pleaded nolo voluntarily and intelligently, the trial justice ruled, "This eliminates the necessity, in accordance with applicant counsel's representation for the Court to consider either the validity of the search warrant or any waiver on the part of Mr. Feng of his constitutional right to attempt to quash a search warrant under the Fourth Amendment."

Based on the representations of Feng's counsel, the trial justice's determination that the pleas were valid foreclosed his consideration of the search–and–waiver issues for Feng had raised those issues contingently upon a finding that the pleas were invalid. We shall therefore not consider whether a valid nolo plea constitutes a waiver of the right to contest the legality of a search because Feng in effect has raised that issue for the first time on appeal from denial of his application for postconviction relief. *Johnson v. Mullen, supra.*

### C

We turn next to consider Feng's claim that we must reverse his convictions because his counsel represented interests potentially in conflict with his at the plea and sentencing hearings. According to Feng, the risk of a conflict of interests arises each time an attorney represents more than one defendant in a single criminal proceeding. He contends that as a result of that potential conflict, joint representation of codefendants jeopardizes a criminal defendant's right to effective assistance of counsel as guaranteed by the Sixth Amendment. Feng concludes that the Sixth Amendment requires the trial court to inform defendants represented by a single attorney of the risks involved in joint representation. He claims that the trial justice's failure to inform him of his counsel's potential conflict of interests amounts to reversible error.

After argument of Feng's appeal, the Supreme Court held in *Cuyler v. Sullivan*, —— U.S. ——, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), that the Sixth Amendment does not require state courts to initiate inquiries into the propriety of multiple representation in every case. Rather, "trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist * * * [u]nless the trial court knows or reasonably should know that a particular conflict exists * * *. *Id.* at ——, 100 S.Ct. at 1717, 64 L.Ed.2d at 345–46. Feng does not point to any special circumstances that should have alerted the trial justice that a particular conflict of interests existed. Indeed, he does not claim that an actual conflict ever arose. Rather, he bases his constitutional claim on the mere possibility that his attorney's representation of Root and Walters might have resulted in a conflict of interests. After *Cuyler*, we must conclude that under the circumstances of this case the Sixth Amendment does not lend support to Feng's claim.

In the alternative, Feng has requested this court to exercise its supervisory jurisdiction to fashion a rule requiring the trial court to inform criminal defendants represented by a single attorney of the potential for conflict of interests. We agree that in many cases representation by a single attorney exposes joint criminal defendants to grave risks. *See, e. g., Cuyler v. Sullivan, supra; Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). We also observe that the Supreme Court regarded use of a court's supervisory power to create such a rule "a desirable practice." *Cuyler v. Sullivan*, —— U.S. at —— n.10, 100 S.Ct. at 1717 n.10, 64 L.Ed.2d at 345 n.10.

The record before us does not impel us to act. Feng claims that we should adopt a rule concerning joint representation of criminal defendants because "fundamental justice" demands that such defendants "be told of the risks involved when the same" counsel represents more than one defendant. The record of Feng's postconviction relief hearing discloses, however, that the counsel who had represented Feng at the plea and sentencing hearings testified that "conflict as a potential problem was discussed * * * I believe [Feng, Root, and I] concluded that there was in fact, no problem * * *." The trial justice expressly credited that attorney's testimony and discredited Feng's testimony. On review of an application for post–conviction relief we are bound by the trial justice's determination concerning credibility. *State v. Duggan, supra.* We therefore must conclude that Feng was informed prior to the entry of his nolo pleas of the potential conflict of interest inhering in his attorney's concurrent representation of Root and Walters.

We shall not, however, consider the merits of adopting such a rule in light of the circumstances presented in this case. The exercise of our supervisory jurisdiction is an extraordinary measure. *Cf. State v. DeLomba, supra* (Supreme Court exercised its supervisory jurisdiction in criminal case). Creation of a new rule that will affect a large number of cases may require input from many sources. *See Knott v. Langlois*, 102 R.I. 517, 231 A.2d 767 (1967). At the least we shall require the proponent of such a rule to outline the scope of the proposed rule and the necessity for its adoption. In this case Feng has suggested only that this court "ought to announce a rule concerning the conduct of the judiciary and members of the Bar concerning the question of representation of two or more defendants by the same attorney."

## IV

Although consolidated under a single docket number, this case in effect encompasses three distinct proceedings. Feng, by petitioning this court for a writ of habeas corpus, first sought relief from an order of the trial justice denying him bail pending appellate review of his application for postconviction relief. He then filed two notices of appeal in the Superior Court. In one of those appeals Feng sought review of the denial of his application for postconviction relief. In the other appeal Feng requested this court to vacate the two–year sentence imposed by the trial justice at the conclusion of his postconviction relief hearing. He claimed that the trial justice had summarily abrogated his agreement with the state to defer sentence on the charge of possession of LSD and had imposed the two–year sentence contrary to the express requirements of Super.R.Crim.P. 32.

Our examination of the record disclosed, however, that Feng's appeal from imposition of the two–year sentence was not properly before this court. In *State v. Tessier*, 115 R.I. 372, 346 A.2d 121 (1975) we ruled that defendants must move for revision of sentence pursuant to Super.R.Crim.P. 35 before they may appeal to this court. In this case, Feng had timely filed but had failed to pursue a Rule 35 motion prior to appealing from imposition of the two–year sentence. Thus, we have remanded Feng's appeal from that sentence to permit the Superior Court to decide Feng's Rule 35 motion. *Cf. State v. Carsetti*, 117 R.I. 670, 671 n.1,

.. 

**1274**

370 A.2d 238, 239 n.1 (1977) (defendant duly filed his motion under Rule 35); *State v. Tessier, supra; see also State v. Clark,* 118 R.I. 907, 374 A.2d 552 (1977); *State v. Cline,* 118 R.I. 906, 371 A.2d 607 (1977).

We deny Feng's application for bail pending appellate review of his application for postconviction relief *pro–forma.* We also deny and dismiss Feng's appeal from denial of his application for postconviction relief.

Indictment No. 75–1242

### AFFIDAVIT AND ATTORNEY'S CERTIFICATION

I, _F. David Feng_, defendant in the above numbered indictment, being charged with the crime(s) of _4 counts—narcotics violations_ with maximum sentence(s) authorized by law of _20 years and/or $20,000_ do hereby make affidavit upon oath and say that I have been advised and have been explained fully by my attorney _Stephen J. Fortunato, Jr._ regarding the nature of the charge and the consequences of the plea of GUILTY and NOLO CONTENDERE.

I have been advised, and I fully understand, that: I can plead NOT GUILTY and have a trial with a jury, or before a single judge; at such a trial I would have the benefit of the presumption of innocence, the privilege against self incrimination, the right to confront and cross-examine my accusers and the witnesses against me, the right to testify and to call witnesses in my own defense, the right to have the State prove me guilty beyond a reasonable doubt before the jury or judge could convict me, and the right to appeal a conviction to the Supreme Court of Rhode Island.

I have also been advised, and I fully understand, that: by pleading GUILTY or NOLO CONTENDERE I am giving up all the above rights; that a plea of NOLO CONTENDERE is the same as a plea of GUILTY for all purposes in this case; that the Court may impose a sentence up to the maximum sentence authorized by law, from which there can be NO appeal; that if a plea of GUILTY or NOLO CONTENDERE is accepted by the Court and is entered in my behalf, then I am bound by the plea and may not withdraw the plea unless by permission of the Court.

No promises have been made to me by the prosecuting attorney, my own Attorney or the Court except as follows:

_Attorney general will make no recommendation regarding sentence_

I also understand that for purposes of this case I am admitting sufficient facts to substantiate the charge(s) which has (have) been brought against me in the indictment(s) to which these pleas relate.

_/s/ F. David Feng_
Defendant

Signed and Sworn to at _Providence_, on the _14th_ day of _March_. A.D. 197_7_.

_/s/ Stephen J. Fortunato, Jr._
Notary Public

### CERTIFICATION

I hereby certify that I have explained the above to _David Feng_ and that the defendant has read and indicated to me that he/she fully understands all his/her rights and the defendant voluntarily and intelligently enters a plea of GUILTY—NOLO CONTENDERE to the charge(s) in indictment numbered _75–1242_.

_/s/ Stephen J. Fortunato, Jr._
Attorney