DECISION
Before the Court is the Post-Conviction Relief application for Mr. Lopes. Mr. Lopes seeks relief from his conviction in criminal case P1/08-339. In that case, Mr. Lopes enters a plea of nolo contendere to several counts, including one count of burglary, for which he was sentenced to 30 years, 20 years of which were to serve.
A variety of post-conviction issues were raised even though Mr. Lopes pled to the respective charges. Most of the issues are inadequately briefed, and appear to be mentioned in passing. The focal point of Mr. Lopes argument is the adequacy of his trial counsel's representation. He appears to raise three issues: First, that the value of the items taken was not adequately investigated; second, that counts were inappropriately joined in the same complaint without objection; and third, that the physical evidence, such as the DNA, was not investigated. There are minimal citations to authority in the memoranda of Mr. Lopes. Instead, the briefs are argumentative in nature, claiming that violations of due process and equal protection resulted, that Mr. Lopes was prejudiced and that "Defendant has maintained his innocence throughout and still maintains his *Page 2 
innocence on all counts." Pl.'s Memorandum of June 1, 2010. In fact, Mr. Lopes, under oath acknowledged his guilt and plead to all counts.
This case was heard before the Court, in a jury waived trial. At that time, Mr. Lopes was provided with the opportunity to present his witnesses. Generous postponements and continuances were allowed so as to provide him with the opportunity to obtain additional information.
 I. Presentation of Witnesses
At the post-conviction relief trial, Mr. Lopes testified that he did not talk extensively with his attorney prior to the scheduled trial, and he did not realize that his case was actually scheduled for trial until he was taken to Court on the day of trial.[1] He testified that he was in fear of receiving a life sentence, didn't understand the procedure and did not know the elements that were required in order for the state to prove its case against him.[2]
The Court found Mr. Lopes' credibility to be minimal. On cross-examination, it was revealed that he had over twenty-five charges on his record many of them resolved through pleas of guilty or nolo contendere. While Mr. Lopes claimed he was not familiar with criminal information, he revealed that he knew the information package to be the state's entire package against him, and that he had received such packages in the past. Although he initially claimed he did not know what a criminal information package was, he also revealed that he asked his attorney for the package. His claimed ignorance of his rights was particularly suspect. He inferred that he did not *Page 3 
know of his right to a trial at the time of the plea. On cross, he revealed that he acknowledged giving up this right during the plea hearing, as he had done in several pleas over the past 25 years. He admitted going through a full violation hearing and an evidentiary hearing on the motion to suppress (held during the day before the trial). He distinguished his previous convictions as he acknowledged taking responsibility for a crime which he committed, but he claimed, (at the post conviction relief hearing) that he did not do the crimes alleged here.[3]
While he testified that he left school while in tenth grade, the Court found him relatively well spoken, intelligent, deductive and very cognitive of his surroundings. His testimony was inconsistent, self-serving, not credible, and not helpful to the factfinder.
Maria Lopes, the wife of the plaintiff also testified. She testified that she made several attempts to contact Mr. Lopes' attorney prior to trial in order to get additional information for her husband. She acknowledged that she was able to get some information from the court clerk and she delivered it to Mr. Lopes promptly.
The attorney who defended Mr. Lopes at the motion hearing and the plea hearing also testified at length. Given the passage of time and the volume of his practice, he indicated that he did not specifically recall this plea hearing, but he did recall speaking with Mr. Lopes in advance, who never denied committing the crimes alleged. He had limited knowledge of his specific conversations with Mr. Lopes, did not recall the evidence without reviewing the file, and did not recall the scope of his investigation. He testified that he met with Mr. Lopes at the prison. On cross, the attorney acknowledged filing a number of motions to suppress and discovery requests, and even filed a motion *Page 4 
for an independent prosecutor. He described, in depth his custom and practice of reviewing the plea form with his clients.
Given that his actions as counsel were under scrutiny in an open court proceeding and being criticized by the Court, the attorney was extremely cooperative, thoughtful and well-reasoned, even when he was being asked by counsel why he did not take certain preliminary steps. The Court found him credible, though he admitted his memory was limited.
 II. Findings of Fact
While no specific findings of fact were requested, the Court finds that Mr. Lopes was cognizant of the proceedings and his rights in criminal action P1/08-339A. He recognized the significance of the motion to suppress, conferred and cooperated with his counsel, and cooperated with his defense. He is an intelligent, thoughtful and reasoned man. While he had some concern about receiving a longer sentence, he entered a plea of nolo contendere, knowing in advance what his sentence would be (including 20 years to serve).
On November 19, 2008, after a motion to suppress was denied, Mr. Lopes pled nolo contendere in criminal case P2/08-448 to three separate counts. He was sentenced to 15 years to serve for breaking and entering into a dwelling (count 1), a five-year suspended sentence for receiving stolen goods (count 2), another five-year suspended sentence for receiving stolen goods (count 3), and a one-year suspended sentence for a third charge of receiving stolen goods (count 4). On the same date he pled nolo contendere in criminal case P1/08-339 to one count of burglary, for which he was *Page 5 
sentenced to 30 years, 20 years of which were to serve. At the plea hearing on November 19, 2008 the Court found a factual basis for the crime of robbery. Mr. Lopes understood the rights and privileges he gave up and did so knowingly, voluntarily, intelligently and with full awareness of the consequences. The Court accepted his pleas of nolo contendere and sentenced him as stated on the Judgment of Conviction document.
 III. Analysis
Earlier this month, our high court stated "[P]ost-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." Gordon v.State, 2011 WL 1345574, 5 (R.I. 2011), citing Young v.State, 877 A.2d 625, 628 (R.I. 2005); and G.L. 1956 § 10-9.1-1(a)(1).
Mr. Lopes claims that his constitutional rights were violated due to the ineffective assistance of his trial counsel. The Rhode Island Supreme Court has been even more specific in addressing ineffective assistance of counsel in a post conviction context:
 This Court has adopted the standard announced by the United States Supreme Court in Strickland v. Washington, [466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)] when generally reviewing claims of ineffective assistance of counsel." Rodrigues, 985 A.2d at 315 (quoting Powers v. State, 734 A.2d 508, 521 (R.I. 1999)). Under Strickland, when confronted with a claim that a criminal defendant received ineffective assistance of counsel, the Court must conduct a two-part test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Powers, 734 A.2d at 522 (quoting Strickland, 466 U.S. at 687, 104 S. Ct. 2052). In looking at this first part, we have held that "[t]he Court will reject an allegation of ineffective assistance of counsel *Page 6 
`unless a defendant can demonstrate that counsel's advice was not within the range of competence demanded of attorneys in criminal cases * * *.'" Rodrigues, 985 A.2d at 315 (quoting Moniz, 933 A.2d at 697). Further, we have held that the first part "must be assessed in view of the totality of the circumstances" with a strong presumption that counsel's conduct falls within the permissible range of assistance. Hazard, 968 A.2d at 892 (citing Heath v. Vose, 747 A.2d 475, 478 (R.I. 2000); and (Strickland, 466 U.S. at 689, 104 S. Ct. 2052).
 "Second, the defendant must show that the deficient performance prejudiced the defense." Powers, 734 A.2d at 522 (quoting Strickland, 466 U.S. at 687, 104 S. Ct. 2052). "When evaluating a claim for ineffective assistance of counsel in a plea situation, the defendant must demonstrate a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial" and, importantly, that the outcome of the trial would have been different. State v. Figueroa, 639 A.2d 495, 500 (R.I. 1994) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985)). Neufville v. State, 13 A.3d 607, 610 (R.I. 2011).[4] *Page 7 
Accordingly, to establish ineffective assistance of counsel, Mr. Lopes must demonstrate that his attorney's performance was deficient. He must demonstrate that counsel made errors so that counsel was not functioning as guaranteed by theSixth Amendment. Second, Mr. Lopes must demonstrate that the deficient performance prejudiced his defense. This requires showing that the attorney committed errors which were so serious that Mr. Lopes was deprived of a fair trial. Simply put, Mr. Lopes has not met his burden on either showing. He has not established that his trial counsel was constitutionally deficient or ineffective.
 IV. The Elements at the Plea.
The larger question posed by this action is the quality of Mr. Lopes' plea of nolo contendere, particularly with regard to his plea on the burglary charge.
Our Supreme Court has recently restated the time honored elements of burglary:
 It is well established that the burglary statute, G.L. 1956 § 11-8-1, incorporates the common law definition of the *Page 8 
crime-"the breaking and entering the dwelling-house of another in the nighttime with the intent to commit a felony therein, whether the felony be actually committed or not." State v. Contreras-Cruz, 765 A.2d 849, 852 (R.I. 2001) (quoting State v. Hudson, 53 R.I. 229, 230, 165 A. 649, 650 (1933)). State v. Abdullah, 967 A.2d 469, 476 (R.I. 2009).
With these stated elements in mind, a review of the facts stated by the prosecutor during the plea proceeding is particularly helpful:
 As to the indictment P1/08-0339A the facts are that on or about December 8th of 2007 that this defendant did commit burglary of the dwelling house of Xiomara Nieves Fernandez, that dwelling house being located at 4 Glasgow Street in the City of Providence and that burglary is specifically was (sic) constituted by this defendant breaking and entering that apartment in the nighttime with the intent to commit larceny inside of that apartment; that he did, in fact, commit larceny inside that apartment. Hr.'g Tr. p. 67, (Nov. 19, 2008).
Of course, larceny is a crime in our state. However, larceny is not always a felony. R.I.G.L. § 11-45-1 segregates the crimes of larceny according to the property which is taken. If the property is valued at more than $500 or includes a firearm, the larceny is punishable by up to ten years of imprisonment and is therefore a felony. If the property is less than $500 in value, the crime is punishable by imprisonment of up to one year, and is therefore a misdemeanor. See R.I.G.L. § 11-1-2. Accordingly, by the limited information provided to the Court by the prosecutor within the plea colloquy, the Court did not know whether Mr. Lopes was intending to commit a misdemeanor or a felony.[5] The factual recitation should have been more complete.
In accepting a plea, the Court is bound by the requirement of Rule 11 of the Rules of Criminal Procedure which states in part: "The court shall not enter a judgment upon a *Page 9 
plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea." Again, as the Feng Court declared "Where a plea has been accepted without conforming to the requirements of the rule, the defendant's plea must be set aside and he is entitled to plead anew." Feng, 421 A.2d at 1267.See also State v. Frazar, 822 A.2d 931, 935 (R.I. 2003).
The robbery case (P1/08-339A) was presented to the Court in an indictment. Accordingly, the Court did not have police reports or a sworn complaint in the case file. The court had available to it: The prosecutors' statement, the evidence (including the testimony) from the motion to suppress, and the scant file material. Fortunately, the motion to suppress provided the Court with extensive information concerning the events of the night of December 8, 2007, when the robbery allegedly occurred. Unfortunately, it provided minimal information concerning the value of the items taken, or Mr. Lopes' intent.
The transcript of the motion to suppress discusses the goods actually taken, but does not describe their value: "I retrieved a gold necklace, gold ring, silver ring and a two dollar bill from his left front pocket and screwdriver with a metal handle from his jacket pocket." Transcript of testimony of Patrolman Pattie, p. 50. This vague description of the property taken does not leave the Court reasonably satisfied that Mr. Lopes took goods with a value of over $500.
The true measure of the crime, however, is not whether the goods taken were over $500, but whether Mr. Lopes intended to commit a felony. Proof for a burglary requires formation of specific intent. Heath v. Vose, 747 A.2d 475, 479 (R.I. 2000). That is, the state must demonstrate that the defendant intended to commit a felony within the *Page 10 
dwelling. Mr. Lopes acknowledged certain facts to be true during his plea colloquy. However the one element absent, is his intent to commit a felony.
In State v. Feng, 421 A.2d 1258 (R.I. 1980) our high court examined the sufficiency of a plea. In a portion of that decision, the court provides a thorough discussion of the need for the court to have a complete factual basis, and the application of Rule 11.
 Feng concedes that Rule 11 permits the trial court to make the required factual determination at any time prior to imposition of sentence. See United States v. Bradin, 535 F.2d 1039 (8th Cir. 1976). He concedes also that the trial court may rely on any of several sources to establish the factual basis, including a colloquy between the defendant and the trial justice; a prosecutor's recitation of the state's evidence, State v. Williams, supra; or a pre-sentence report delineating the defendant's conduct, United States v. Bradin, supra. According to Feng, however, the language in Rule 11 that the court must be "satisfied that there is a factual basis" imposes a subjective standard for determining whether a factual basis for a plea exists. . . .
 We agree that Rule 11 implies a subjective standard for determining whether a factual basis exists, but we reject Feng's proposed limitations on the scope of our review. The Superior Court adopted Rule 11 to safeguard the rights of criminal defendants who plead guilty or nolo contendere; it did not intend that the rule serve as a trap for those justices who fail to enumerate each fact relied on to accept such a plea. In reviewing whether a trial justice could have been satisfied for purposes of Rule 11, we shall examine the record for all indices that a guilty or nolo plea was based on fact. We shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual basis existed for a defendant's plea. Thus if the record in this case discloses other facts from which the trial justice could have been satisfied that a factual basis existed for Feng's nolo pleas, we need not consider whether Feng's assent to the trial justice's question was by itself sufficient for that purpose. State v. Feng, 421 A.2d 1258, 1268-1271 (R.I. 1980). *Page 11 
In a more recent decision, the Rhode Island Supreme Court held
 This Court "shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual basis existed for a defendant's plea." Frazar, 822 A.2d at 935-36 (quoting State v. Feng, 421 A.2d 1258, 1269 (R.I. 1980)). In the case at bar, the trial justice conducted an appropriate plea colloquy in accordance with Rule 11, and there is no basis for us to vacate applicant's guilty plea based on allegations of constitutional error. Rodrigues v. State, 985 A.2d 311, 315 (R.I. 2009)
As the trial court can consider a pre-sentence report in determining whether there is a factual basis, the trial court can also view the other reliable documents reasonably before it. The plea negotiations, and the plea itself, were done in concert with P2/08-448. That case emanates from information filed against Mr. Lopes. While the robbery charge was a scant file, the information in P2/08-448 was far more extensive. The information file contained four separate charges of breaking and entering into a dwelling, and three charges of fraudulently receiving stolen goods valued at $500 or more. The police report for the Pinecrest Drive breaking and entering (which Mr. Lopes plead to) indicates goods worth over $4000 were stolen. Mr. Lopes was in possession of items valued at over $1000 from the Atwells Avenue break in. After the search warrant was executed in December of 2006, Mr. Lopes had possession of over $1000 worth of property from the Attleboro break in. He also possessed over $500 worth of property from an Atwells Avenue break in. These allegations of fact, the affidavits, photographs, inventories and other material provided this Court with ample support for the plea.[6] Mr. Lopes admitted the facts during the same plea hearing. Hr.'g Tr. pp. 71-72, (Nov. 19, 2008). Clearly the *Page 12 
State had proof that Mr. Lopes intended to commit a felony inside this home, if he could locate items worth over $500.
 V. Conclusion
While the plea survives, the Court is troubled with the scant description of facts provided at the plea colloquy, and suggests that more extensive descriptions be provided in future plea hearings. While such proceedings can become routine, the United States Supreme Court reminds us:
 That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. . . . . . But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial-a waiver of his right to trial before a jury or a judge. Brady v. U.S., 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-1469 (1970), footnotes omitted.
In this action, the Court was extensively familiar with the facts, having reviewed each of the criminal files with the attorneys in pre-trial discussions. Mr. Lopes' application for post-conviction relief is denied.
[1] The court file reflects that the trial was scheduled for November 17, the motion to suppress was not heard until November 18, and Mr. Lopes pled on November 19.
[2] Mr. Lopes acknowledged, under oath, that his attorney had explained all of the elements of all of the charges. Hr.'g Tr. P. 67, Nov. 19, 2008
[3] Obviously, this is quite different from his statements during his plea.
[4] A further reading of Neufville shows a post-conviction relief case nearly identical to the one at bar, where Mr. Lopes alleges that his trial counsel was deficient, but cannot point to anything that counsel could have done which would have changed the result:
 Here, Neufville has alleged that his trial attorney's performance was deficient because counsel failed to conduct discovery, interview witnesses, file motions, or meet with him often enough.
 . . .
 Both Neufville and his trial attorney testified at the post-conviction relief hearing. Neufville cited a number of alleged deficiencies in counsel's performance. He testified that his attorney came to meet with him less than ten times; he added that the meetings generally lasted five to ten minutes. During those conferences, Neufville alleges that he provided counsel with the names of witnesses, none of whom was interviewed in advance of trial, despite Neufville's assertion that he told his lawyer he was innocent.
 In contrast, counsel testified that Neufville never disclosed any potential witnesses and refused to "divulg[e] the identity of any other individuals involved" in the alleged offenses. Defense counsel insisted that had he been provided with the names of potential witnesses, he would have sent an investigator to speak with them because this was his practice in every case.
 Defense counsel also testified that, although Neufville told him that he "didn't do it," his client failed to provide him with any information that would help him formulate a defense. . . . On the day of the trial, when the state's witnesses did appear, counsel testified that Neufville "had to make the difficult choice" and that he decided to accept the plea offer of three and one-half years to serve.
 . . .
 After a careful examination of the record, it is our opinion that Neufville has not overcome the strong presumption that counsel's performance fell within the permissible range of assistance. See Hazard, 968 A.2d at 892 (citing Heath, 747 A.2d at 478). The trial justice found defense counsel's testimony to be credible, and we perceive no basis for disagreeing with this finding. Additionally, although counsel has a duty to investigate his client's case, when the only information provided by the client consists of "I didn't do it," we cannot say that counsel has been provided with any facts to investigate or otherwise employ as a defense. See Hazard, 968 A.2d at 893 (where we held "[i]n view of the totality of the circumstances, we agree with the hearing justice's conclusion that [the trial attorney] was not provided with enough details to investigate the [issue] before trial"); see also Delahunt v. State, 440 A.2d 133, 136 (R.I. 1982) ("[c]ounsel can hardly be expected to interview alibi witnesses of whom he was unaware" because his client failed to notify him of any potential alibi witnesses).
 We also reject applicant's contentions that counsel's failure to file certain pretrial motions amounted to ineffective assistance of counsel. See Rodrigues, 985 A.2d at 316-17 (in which the record shows that counsel had a complete criminal information package, was aware of the strength of the state's evidence and the accused did not point to any exculpatory evidence that would have affected her plea, counsel's failure to seek discovery did not amount to constitutionally deficient representation). Neufville v. State, 13 A.3d 607, 610-612 (R.I. 2011).
[5] Information regarding the State's proof of intent should have been given to the Court during the colloquy.
[6] The Court did not need to rely on the allegations contained in the police reports or the Habitual Offender Notice filed on February 27, 2008 describing Mr. Lope's extensive criminal record. *Page 1