February 13, 2025

**Supreme Court**

No. 2023-54-Appeal.
(PM 18-2012)

Rhode Island Department of    :
  Attorney General

     v.      :

  Brian Smith.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Department of      :
       Attorney General

v.                    :

Brian Smith.            :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court, on appeal by the petitioner, Brian Smith (petitioner or Smith), from a Superior Court judgment in favor of the Rhode Island Department of Attorney General (the state), that upheld the Sex Offender Board of Review (the board) classification of the petitioner as a level III sex offender. The petitioner raises several issues on appeal. For the reasons stated herein, we affirm the judgment of the Superior Court.

## Facts and Travel

The petitioner was initially charged on February 10, 2015, by way of criminal information, N2/15-45A (the Newport case)—alleging one count of simple assault, in violation of G.L. 1956 § 11-5-3, and one count of second-degree child molestation, in violation of G.L. 1956 §§ 11-37-8.3 and 11-37-8.4, regarding an

- 1 -

incident that occurred on or about July 19, 2014, at a Newport International Polo event.  According to the Portsmouth Police Department, it was reported that an adult male, later identified as Smith, "touched several children inappropriately * * *." Specifically, it was alleged that Smith approached the two children—a ten-year-old male and a ten-year-old female—embraced them from behind and proceeded to rub their shoulders.  The ten-year-old female further alleged that Smith "put his hand up her skirt rubbing her thigh."  After a jury trial, on April 4, 2016, Smith was found guilty of the lesser-included offense of simple assault and the second count of simple assault.   Smith was sentenced to serve two years at the Adult Correctional Institutions.

While Smith's Newport case was pending, on November 2, 2015, an additional charge of second-degree child molestation was brought against petitioner by way of criminal information, P2/15-3448A (the Providence case), after petitioner's niece came forward and alleged that he had sexually assaulted her in 2004, when she was nine years old.  The petitioner's niece was twenty-one years of age when she reported this incident to the Portsmouth Police Department, which in turn contacted the Smithfield Police Department.  According to police narratives, the niece alleged that Smith "kissed her with his tongue," and "touched her over her clothes on her groin area * * *."  The petitioner entered a plea of nolo contendere to one count of second-degree child molestation and was sentenced to ten years at

the ACI with two years to serve, eight years suspended, and ten years' probation. It was this conviction that triggered Smith's case for the board's determination of petitioner's risk to reoffend.

However, on November 17, 2016, petitioner was charged in yet a third case, K2/16-637A (the Kent case), with four counts of second-degree child molestation. After news reports about Smith surfaced, an anonymous source contacted the Portsmouth Police Department and advised that it was possible that Smith had molested numerous children years ago in the town of East Greenwich. The anonymous caller identified one victim, who subsequently was contacted by the East Greenwich Police Department. The first victim, a friend of Smith's daughter, reported that she was sexually abused by Smith from 1997 when she was about five or six years old, and up until she was about twelve years old. Upon speaking with the first victim, the East Greenwich police learned that there may have been two more individuals who suffered abuse by Smith. The East Greenwich Police Department continued its investigation and ultimately reported that "Smith had assaulted * * * three girls over a period of time," all of whom reported to having been sexually abused by Smith when they were as young as five years old, and two who reported that the abuse continued for another six to seven years.

On December 14, 2017, petitioner pled nolo contendere to two of the four second-degree child molestation charges in Kent County, and the remaining two

charges were dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.[1] Smith was sentenced to ten years at the ACI, with six years to serve, four years suspended, and ten years' probation for each count, to run concurrently.

Before the plea in the Kent case, on or about November 29, 2017, in accordance with G.L. 1956 chapter 37.1 of title 11, the Sexual Offender Registration and Community Notification Act (Notification Act), the board classified Smith as a level III sex offender and determined that his risk to reoffend was "HIGH." The evidence in the board's risk-assessment report included Smith's past criminal history, police narratives, and reports based on risk-assessment tools, and, in sum, reported that the victims of Smith's sexual abuse consisted of

> "6 victims, one not resulting in a conviction, 5 females and 1 male that he molested when they were between the ages of 8 and 13. Three of these victims were friends of his daughters and visited [Smith's] home frequently, going on trips with [Smith's] family as well. Two of the victims, one male [and] one female, were strangers to [Smith] and one [other victim] was a relative."

While imprisoned at the ACI, Smith received written notice detailing the board's proposed sex-offender classification, the conditions concerning a level III

---

[1] Rule 48(a) of the Superior Court Rules of Criminal Procedure states: "*By Attorney for State*. The attorney for the State may file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate. Such dismissal may not be filed during the trial without consent of the defendant."

classification, and his right to appeal. Smith filed a timely objection to the board's level III classification and sought Superior Court review of the board's determination and a reevaluation of its decision. Smith retained counsel, and on or about December 6, 2017, Smith's attorney made the same request to the Superior Court—a review and reconsideration of the board's level III classification.

On or about March 27, 2018, the state moved to affirm the board's level III classification, and along with its motion, the state included evidence of the board's various risk-assessment reports (the Static-99R, Static-2002R, and the Stable 2007), court documents and police narratives. In addition to the evidence submitted by the state, the court also considered petitioner's ACI counseling reports that postdated the board's review from 2018 through May 2021, and Smith's *pro se* brief.

In accordance with G.L. 1956 §§ 8-2-11.1 and 8-2-39.2, a Superior Court magistrate presided over the matter.[2] The magistrate offered petitioner the opportunity for a full and meaningful hearing. Following a hearing, on November 2, 2021, the magistrate issued a bench decision and affirmed the board's classification. The petitioner appealed the magistrate's decision to a justice of the Superior Court.

---

[2] See G.L. 1956 § 8-2-11.1, "Administrator/magistrate," and § 8-2-39.2, "Drug court magistrate – Appointment, duties and powers."

The state and petitioner appeared before the trial justice on January 20, 2023, and at that time the trial justice distributed his written decision to the parties.[3] The trial justice initially determined that the Superior Court did not have proper jurisdiction to hear petitioner's case as an "appellate tribunal." Specifically, the trial justice concluded that, because Smith appealed the board's decision to the Superior Court, and the matter was then heard by a magistrate of the Superior Court, who sits as a Superior Court justice, the Superior Court no longer had the authority to hear Smith's appeal. Despite this conclusion, the trial justice nonetheless addressed the merits. Assuming *arguendo* that the matter was properly before him, the trial justice affirmed the magistrate's decision upholding the board's classification and denied petitioner's appeal. That same day, the Superior Court entered a judgment denying petitioner's appeal.

**Standard of Review**

"General Laws 1956 §§ 8-2-11.1(e) and 8-2-39(f) provide this Court with the authority to review final Superior Court decisions reviewing orders of magistrate proceedings." *State v. Decredico*, 291 A.3d 544, 548 (R.I. 2023). "On appeal, this Court will not disturb the factual findings of the trial justice unless she or he made

---

[3] The record discloses that petitioner was represented by counsel throughout the hearings before the magistrate in September 2021, October 2021, and November 2021. Sometime thereafter, when he appeared before the trial justice in Superior Court on January 20, 2023, he represented himself.

clearly erroneous findings or misconceived or otherwise overlooked material evidence." *Id.* "However, this Court uses a *de novo* standard when reviewing questions of law." *Id.*

## Analysis

### Jurisdiction of the Superior Court

According to § 8-2-39.2(f), "[t]he drug court magistrate shall be empowered to hear and decide as a superior court justice all matters that may come before the superior court pursuant to chapter 37.1 of title 11 'sexual offender registration and community notification.'" Section 8-2-39.2(f). Moreover, § 8-2-39.2(j) provides:

> "A party aggrieved by an order entered by the drug court magistrate shall be entitled to a review of the order by a justice of the superior court. Unless otherwise provided in the rules of procedure of the court, such review shall be on the record and appellate in nature. The superior court shall, by rules of procedure, establish procedures for reviews of orders entered by a drug court magistrate, and for enforcement of contempt adjudications of a drug court magistrate."

Here, the trial justice declared that the Superior Court did not have the appropriate authority under §§ 8-2-39.2(f) and 8-2-39.2(j) to review petitioner's appeal because, he concluded, the language of § 8-2-39.2(f)

> "grants the drug court magistrate the authority 'to hear and decide as a [S]uperior [C]ourt justice appeals of a risk level classification decided by the [b]oard.' Section 8-2-39.2(f). When a drug court magistrate sits as a [S]uperior [C]ourt justice, he or she must follow the same rules as other [S]uperior [C]ourt justices and 'any party

- 7 -

aggrieved by a final judgment, decree, or order * * * may appeal to the [S]upreme [C]ourt.' G.L. 1956 § 9-24-1." (Brackets omitted.)

Thus, the trial justice appears to have determined that, when a drug court magistrate presides over an appeal from the board, that magistrate is no longer sitting as a drug court magistrate, but rather he or she presides over the appeal in the capacity as a *justice* of the Superior Court. Following this logic, the trial justice further determined that the appeals regarding an individual's sex-offender registration must be brought before this Court, and not before a justice of the Superior Court. We disagree.

Section 8-2-39.2 creates the position of the drug court magistrate who is vested with three primary responsibilities: (1) to preside over drug court cases (§ 8-2-39.2(c)); (2) to review sexual offender registration appeals from the board (§ 8-2-39.2(f)); and (3) to preside over matters as a general magistrate (§ 8-2-39.2(h)). Section 8-2-39.2. We focus our attention on § 8-2-39.2(f), which provides that "[t]he drug court magistrate shall be empowered to hear and decide *as a superior court justice* all matters that may come before the superior court pursuant to chapter 37.1 of title 11 'sexual offender registration and community notification.'" Section 8-2-39.2(f) (emphasis added). This authority does not divest a judicial officer's appellate-review function, as is clear from the plain language of § 8-2-39.2(j).

- 8 -

Accordingly, we deem the trial justice's erroneous conclusion concerning his lack of authority to hear Smith's appeal to be harmless error because he nonetheless addressed the merits of Smith's appeal.

## The Merits of Smith's Appeal

### Due Process Claims

On appeal, petitioner argues that his procedural and substantive due process rights, as guaranteed by the United States Constitution and the Rhode Island Constitution, were violated. Specifically, Smith contends that he "was not accorded an opportunity to challenge the findings of the [b]oard through standard adversarial proceedings in violation of his constitutionally protected rights to procedural due process of the law." As a result, petitioner further argues that he was deprived of a liberty interest when his classification was published before his appeal was entertained. The state objects to petitioner's contention and also submits that Smith's substantive due process arguments are conclusory and not sufficiently developed for this Court's review and that, therefore, Smith has effectively waived arguments relative to his substantive due process claim.

The law in this area is well settled. "Both the state and federal constitutions provide that no person shall be deprived of 'life, liberty, or property * * * without due process of law.'" *State v. Germane*, 971 A.2d 555, 574 (R.I. 2009) (quoting U.S. Const. Amend. XIV; R.I. Const. art. 1, sec. 2). The United States Supreme Court

has also stated that "[t]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Id.* (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985)). "[P]rocedural due process assures that there will be fair and adequate legal proceedings, while substantive due process acts as a bar against 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 210 (R.I. 1997)).

**a**

**Procedural Due Process**

For claims of procedural due process, this Court employs a three-part test articulated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Germane*, 971 A.2d at 574. *Mathews* sets forth the factors to consider when determining whether a given procedure violates procedural due process:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 574-75 (quoting *Mathews*, 424 U.S. at 335).

- 10 -

In accordance with *Mathews*, we consider the nature of the private interest implicated by the Notification Act. *See Germane*, 971 A.2d at 575. Rhode Island has adopted a "'two tier' sex offender registration program[]." *Id.* Under this approach, the first tier "is the triggering conviction." *Id.* at 575 n.28. However, "an individual offender's risk level designation does not turn on criminal conviction alone. In an ancillary civil or administrative proceeding, facts other than conviction are used to assess the risk of future dangerousness, and the risk level determination then dictates the scope of community notification." *Id.* at 575.

This Court has recognized that the community notification for an individual who is classified as a level III sex offender, like Smith,

> "entails widespread dissemination of a sexual offender's personal information within his or her community * * * requir[ing:] disclosure of identifying information in the form of an 'Offender Fact Sheet' to (1) the victim and/or witnesses of the offense for which an offender has been convicted; (2) those organizations the offenders are likely to encounter, such as schools, day care facilities, and other social and religious agencies in the area where the offender will be living and/or working; and (3) those individual members of the public with whom the offender is likely to encounter * * *." *Germane*, 971 A.2d at 576 (brackets omitted).

To determine whether Smith's liberty interests were violated when his sex-offender classification was first published, we first consider the nature of the information that was distributed within Smith's community. *See Germane*, 971 A.2d at 577. In *Germane*, this Court noted that "[i]nformation relating to prior

- 11 -

convictions, physical appearance, address, employer, and so forth, is already a matter of public record and does not implicate [an offender's] liberty interests to any significant degree." *Id.* With respect to *future* dangerousness, the Court in *Germane* determined that the Notification Act "burdens a protectible liberty interest and therefore triggers the individual's right to procedural due process under both the federal and state constitutions." *Id.* at 578. Accordingly, the board's classification process "must satisfy the requirements of procedural due process." *Id.* at 578-79. For the reasons discussed below, we conclude that the requirements of procedural due process have been met.

### i

### Private Interest

In the case at bar, Smith has failed to provide a meaningful, or intelligible, discussion of the purported private interest at stake. In his brief, Smith fails to identify any documents, transcripts, or evidence within the record to support his contention. Rather than pointing to evidence that would support his claim, Smith simply cites to principles set forth in *Germane*: "[T]he Sexual Offender Registration and Community Notification Act burdens a protectible liberty interest and therefore triggers the individual's right to procedural due process under both the federal and state constitutions." *Germane*, 971 A.2d at 578. Smith utterly fails to present any evidence or articulate a meaningful argument that supports his claim concerning how

his private interest was impacted. *See Drew v. State*, 198 A.3d 528, 530 (R.I. 2019) (mem.) ("[S]imply stating an issue for appellate review, without a meaningful discussion thereof * * * does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). Consequently, Smith's contention as to *Mathews*'s first prong is waived.

**ii**

**Risk of Erroneous Deprivation**

Next, petitioner argues that he was not provided "an opportunity to challenge the findings of the [b]oard through standard adversarial proceedings in violation of his constitutionally protected rights to procedural due process of the law." He does not precisely articulate what adversarial proceedings were lacking. According to Smith, "the [c]ourt only first extended the opportunity for adversarial challenge and an evidentiary hearing in September 2021, nearly four years after public notice was made of the [b]oard's risk assessment determination."

The state flatly objects and argues that the record establishes that Smith was provided ample opportunity for a full and meaningful hearing. For example, during the hearings before the magistrate, the state submits that "[t]he magistrate repeatedly advised Smith that he could proceed however he wished with respect to his appeal * * * and that he could, among other things, testify under oath, call witnesses, and

introduce evidence." Thus, the state contends it was Smith who failed to meaningfully engage in these "standard adversarial proceedings."

The magistrate considered the evidence that was submitted in support of the state's prima facie case and addressed the arguments of the parties. First, the magistrate considered the validated-risk assessment tools the board utilized and noted that, although the board is required by statute to conduct only one validated risk assessment, the board utilized three separate risk-assessment tools.[4] The magistrate also referenced other evidence, including the police narratives, Smith's prior criminal history, and counseling records regarding the sex-offender treatment program at the ACI—all of which the board considered in classifying Smith as a level III risk to reoffend.

The trial justice also noted and the record demonstrates that the magistrate graciously and repeatedly reminded Smith of his opportunity to be heard and present evidence to challenge the state's prima facie case. However, "[Smith] *chose* not to present any new evidence to support his appeal." (Emphasis added.) Subsequently, after *de novo* review of the evidence before the magistrate, the trial justice affirmed

---

[4] The three risk-assessment tools the board utilized were: the Static-99R, petitioner scored "3," classified as "average risk"; the Static-2002R, in which petitioner scored a "5," classified as an "above average risk"; and the Stable 2007, petitioner scored a "3," deemed a "low risk." *See* G.L. 1956 § 11-37.1-16.

the magistrate's conclusions that the state met its burden and established a prima facie case showing that the board used reasonable means to collect information and that the board appropriately considered additional material—including three validated risk-assessment tools, information related to his prior criminal convictions, police department narratives, the nature and quantity of the victims in the sexual assault cases, Smith's support system, and the interview the board conducted with Smith while he was incarcerated.

The record before us contains more than sufficient evidence to support the state's prima facie case. We discern no error in the trial justice's decision to affirm the magistrate's conclusion that the board used appropriate means to classify petitioner as a level III sex offender, and we agree with the trial justice that Smith's case fell woefully short of evidence to the contrary. In accordance with § 11-37.1-15, the magistrate informed Smith that the rules of evidence did not apply. *See* § 11-37.1-15(b) ("In any application hearing proceeding the *rules of evidence shall not apply* and the court may rely on documentary presentations, including expert opinion on all issues.") (emphasis added). Based on petitioner's ample opportunities to present evidence, we are satisfied that his due process rights were adequately protected.

**iii**

**Government Interest and Administrative Burdens**

A procedural due process analysis also requires us to analyze "the nature and extent of the government's interest, including the governmental function involved and the financial and administrative burdens that any additional or alternative procedural requirement would entail." *Germane*, 971 A.2d at 582; *see also Mathews*, 424 U.S. at 348. In *Germane*, this Court declared that "[i]t is indisputable that the state has a substantial interest in protecting citizens from the dangers posed by sex offenders deemed to be at high risk of re-offense. The state has an additional interest in expediting the risk level assessment and judicial review processes." *Germane*, 971 A.2d at 582. We further explained that by "[p]roviding limited process at the board of review level and then an opportunity for notice and a hearing for purposes of judicial review before the Superior Court"—as in the case at bar—there is "an appropriate balance between the liberty interests of those required to register as sex offenders and the legitimate social, administrative, and financial interests of the state." *Id.*

Under *Mathews*'s third prong, Smith argues that the state failed to expedite the proceedings and "concurred with the [m]agistrate's recommendation to suspend judicial review until the end of [Smith's] six-year term of incarceration." Smith also contends that there was no state interest served because "[c]ommunity notification

- 16 -

was made four years before [he] was returned to the community. [Smith] was continuously * * * incarcerated at the ACI from April 4, 2016, through November 16, 2021." The petitioner submits that while he was incarcerated he did not pose a threat to the community and that, therefore, community notification should not have occurred. Finally, it is Smith's position that had community notification been delayed pending judicial review, it would not have placed an additional administrative burden or cost upon the state.

The state does not dispute the fact that the community notification occurred before Smith challenged the level III classification; however, the record makes clear that the delay in adjudicating Smith's appeal was due to *an agreement by both parties to delay the review* until Smith's pending Kent case was resolved. The community notification occurred *after* Smith's plea in the Providence case and *before* the board had made any final decision as to whether it would issue a second risk-assessment report based upon the disposition of the Kent case. Notwithstanding the timing in which the notification was made, Smith failed to preserve any issue regarding the timing in which the community notification was released for this Court's review; there is no record showing that petitioner made any effort to have the notification removed from the sex-offender website, nor did Smith timely object to this issue during his appeal before the magistrate. *See Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018). Therefore, we deem this issue waived.

- 17 -

Finally, the trial justice ultimately determined that there was "competent evidence in the record" to support the magistrate's decision and order and further concluded that Smith's claims lacked merit. We agree. In accordance with the *Mathews* test, the evidence in this record does not support a claim for a violation of procedural due process under the federal and state constitutions.

**b**

**Substantive Due Process**

In *Germane*, this Court summarized its analytical approach when addressing claims of substantive due process and observed:

> "The threshold question that must be addressed before we can determine the constitutionality of the statute is whether a fundamental right is in play. If so, in that case the statute will be subject to strict scrutiny; however, where neither a suspect class nor a fundamental right is implicated, then the legislation properly is analyzed under a minimal-scrutiny test. Under those circumstances, this Court will review the statute to insure that a rational relationship exists between the provisions of the statute and a legitimate state interest. Under this analysis, if we can conceive of any reasonable basis to justify the classification, we will uphold the statute as constitutional." *Germane*, 971 A.2d at 582 (brackets omitted) (quoting *Riley v. Rhode Island Department of Environmental Management*, 941 A.2d 198, 205-06 (R.I. 2008)).

Here, Smith asserts that his right to substantive due process was denied.[5] However, Smith has failed to provide a meaningful or, indeed, an intelligible discussion of the purported substantive due process violation, and fails to point to any authority or evidence within the record to support this contention. The petitioner has also failed to direct this Court to any error committed by the trial justice with respect to a substantive due process violation.

As noted, this Court "will not scour the record to identify facts in support of [petitioner's] broad claims, and we will not give life to arguments that the plaintiff has failed to develop on his own." *Drew*, 198 A.3d at 530 (quoting *Terzian*, 180 A.3d at 558). Therefore, we need not address petitioner's substantive due process claim further, as this issue effectively has been waived.

**A Plea of Nolo Contendere**

The petitioner asserts that the trial justice erred in finding that the magistrate and the board were permitted to consider Smith's three pleas of nolo contendere to second-degree child molestation, his resulting convictions, and jail sentences in calculating his risk-level classification. Smith maintains that "[t]here has been no

---

[5] In his appeal, Smith additionally contends that his equal protection rights were also violated. We need not address the issue further as Smith has failed to articulate a claim for a violation of his equal protection rights. *See Drew v. State*, 198 A.3d 528, 530 (R.I. 2019) (mem.) ("[S]imply stating an issue for appellate review, without a meaningful discussion * * * constitutes a waiver of that issue.").

admission of guilt as to any element of the alleged offenses upon which a valid prima facie case might rest." He is mistaken.

The petitioner's argument that a nolo contendere plea cannot be considered as either an admission of guilt or a conviction under § 11-37.1-2 is wholly misplaced. Pursuant to the Notification Act, § 11-37.1-2(d)(1) defines "conviction" or "convicted" in relevant part: "(iii) There has been a plea of guilty or nolo contendere for any offense specified in subsection (f) or (v), or a federal offense * * * regardless of whether an appeal is pending * * *."[6] Section 11-37.1-2(d)(1)(iii). Thus, a plea of nolo contendere is to be treated the same as a guilty plea or a guilty verdict under the Notification Act.

It is also well settled that a plea of nolo contendere in this state is equivalent to a guilty plea. *See Armenakes v. State*, 821 A.2d 239, 246 (R.I. 2003); *see also Cote v. State*, 994 A.2d 59, 63 (R.I. 2010). This Court has observed that a defendant's decision to plead nolo contendere is a serious matter. *See Cote*, 994 A.2d at 63. In this jurisdiction, "a plea of nolo contendere is treated as a guilty plea." *Id.* "A defendant entering such a plea 'waives several federal constitutional rights and consents to judgment of the court.'" *Id.* (quoting *State v. Feng*, 421 A.2d 1258, 1266 (R.I. 1980)). The trial justice properly determined that "a plea of *nolo contendere*

---

[6] See §§ 11-37.1-2(f), "Criminal offense against a victim who is a minor" and 11-37.1-2(v), "Sexually violent offense."

- 20 -

'becomes an implied confession of guilt, and imposition of sentence follows as a matter of course.' * * * [T]he result is the same: the defendant stands convicted of the crime."[7] *Armenakes*, 821 A.2d at 246 (quoting *Nardone v. Mullen*, 113 R.I. 415, 418, 322 A.2d 27, 29 (1974)).

The record is devoid of any challenge to the validity of Smith's pleas of nolo contendere in the Providence and Kent cases. There is not a scintilla of evidence that suggests the pleas were involuntary or that Smith lacked an understanding as to the nature of the charges to which he pled. Accordingly, Smith's argument that the trial justice erred, is rejected.

### Sections 11-37.1-15 and 11-37.1-16

Lastly, we turn to Smith's remaining assertions related to the Notification Act, which we deem to be repetitive, waived, or without merit. Specifically, petitioner asserts that (1) the trial justice erred in failing to conclude that the magistrate abused his discretion by permitting "uncharged, unsubstantiated, refuted, and false information into evidence," which ultimately formed an improper foundation of the board's risk-level assessment and the state's prima facie case; (2) the trial justice erred by failing to conclude that the state had not established a prima facie case

---

[7] The trial justice further determined that, because the rules of evidence are not applicable under the Notification Act (a civil regulatory proceeding), Smith's nolo contendere pleas were appropriately considered by the magistrate when he affirmed the board's decision.

- 21 -

before the magistrate concerning the board's decision to classify petitioner as a level III sex offender; and (3) the board failed to use reasonable means to collect the information that was used to assess petitioner's risk-level classification, thereby violating § 11-37.1-16.[8]

First, we reject petitioner's contention that the trial justice erred by failing to conclude that the magistrate abused his discretion by permitting the board to consider "uncharged, unsubstantiated, refuted, and false information" and therefore provided an improper foundation for classifying petitioner as a level III sex offender.

---

[8] The petitioner also reiterates his argument from below that the state failed to "provide * * * the qualifications, training, or experience of the individuals" who participated in the preparation of the risk assessments and report, and therefore, absent of such information, "lacks [the] proper foundation" to be admissible in these sex offender registration regulatory proceedings. The magistrate determined "that the factors considered by [t]he [b]oard [were] consistent with the guidelines adopted pursuant to the [Notification] Act." The magistrate further recounted that the state used "nationally recognized, well established risk assessment tools," and that the court "believe[d] nothing was presented to the contrary * * * that reasonable means were used to collect the information used in the assessment reports."

To the extent petitioner raises an issue regarding assessor qualifications, training or experience, he has, once again, failed to develop a meaningful discussion thereof, and thus this issue is also waived. *Terzian v. Lombardi*, 180 A.3d 555, 557 (R.I. 2018) ("[E]ven when a party has properly preserved its alleged error of law in the lower court, a failure to * * * develop it in its briefs constitutes a waiver of that issue on appeal and in proceedings on remand.") (quoting *McGarry v. Pielech*, 108 A.3d 998, 1005 (R.I. 2015)). Specifically, petitioner has failed to articulate any meaningful discussion as to the trial justice's alleged error in declining to find that the magistrate abused his discretion in accepting the state's evidence of "nationally recognized" and "well established" risk-assessment reports as a basis of the board's decision classifying petitioner as a level III sex offender.

We also reject petitioner's vague proffer that Rule 301 of the Rhode Island Rules of Evidence "creates ambiguity and confusion." The rules of evidence do not apply. *See* § 11-37.1-15(b) ("In any application hearing proceeding the *rules of evidence shall not apply* and the court may rely on documentary presentations, including expert opinion on all issues.") (emphasis added). Accordingly, such evidence was properly admitted.

We briefly address petitioner's contention that the state failed to establish a prima facie case to affirm the board's classification of Smith as a level III sex offender. Pursuant to the Notification Act, the state bears the burden of establishing a prima facie case that the board's risk classification was appropriate. *See* § 11-37.1-16. "[T]he Superior Court 'shall affirm the determination of the level and nature of the community notification, unless it is persuaded by a preponderance of the evidence that the determination is not in compliance with'" the Notification Act. *Matteson v. Rhode Island Department of Attorney General*, 266 A.3d 1237, 1241 (R.I. 2022) (deletion omitted) (quoting § 11-37.1-16(c)).

The trial justice noted that there was "plenty of other evidence in this case" supporting the board's decision. The trial justice recounted that "[t]he information relied upon by the [b]oard [was] consistent with the requirement of [the Notification Act]," and that as the magistrate recognized, "nothing was presented to the contrary in the [c]ourt's mind, that reasonable means were used to collect the information

- 23 -

used in the Assessment Report." The trial justice observed that, while the state presented a voluminous record before the Superior Court to review, it was petitioner who "chose not to present any new evidence to support his appeal," despite the numerous opportunities to do so. The pleas that Smith entered in the Providence and the Kent cases resulted in criminal convictions. Smith is a convicted sex offender.

Lastly, the petitioner argues that the board failed to use reasonable means to collect information in its risk assessment, and therefore the state failed to meet the second prong of establishing its prima facie case. Again, the petitioner is mistaken. As previously noted, this Court has recognized that "the Static-99R, the Static[-]2002[R], and the Stable 2007 'are recognized as validated risk-assessment tools'" for contact offenders like Smith. *Matteson*, 266 A.3d at 1240 n.1 (brackets omitted) (quoting *DiCarlo v. State*, 212 A.3d 1191, 1193 (R.I. 2019)); *see also Decredico*, 291 A.3d at 550 (noting that although the Stable 2007 was not validated for *all* offenders, it was validated for primarily contact offenders). We need not go further, and therefore, we reject Smith's contention that the state failed to establish its prima facie case.

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court that denied the petitioner's appeal. The papers in this case may be remanded to the Superior Court.



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Rhode Island Department of Attorney General v. Brian Smith. |
| **Case Number** | No. 2023-54-Appeal. (PM 18-2012) |
| **Date Opinion Filed** | February 13, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For State: <br><br> Christopher R. Bush <br> Department of Attorney General <br> For Petitioner: <br><br> Brian Smith, *pro se* |